[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13186
_____

CIR-1: 27236-09L

LINDA J. ROMANO-MURPHY,

Petitioner - Appellant,

versus

COMMISSIONER OF THE INTERNAL REVENUE SERVICE,

Respondent - Appellee.

_____

Appeal from the United States Tax Court
_____

(March 7, 2016)

Before JORDAN, JULIE CARNES, and LINN,[*] Circuit Judges.

JORDAN, Circuit Judge:

_____

[*] The Honorable Richard Linn, United States Circuit Judge for the Federal Circuit, sitting by designation.

Learned Hand and John Minor Wisdom, two of our most venerated jurists, described the Internal Revenue Code as a labyrinth. *See Branum v. Commissioner*, 17 F.3d 805, 808 (5th Cir. 1994) (Wisdom, J.); Learned Hand, *Thomas Walter Swan*, 57 Yale L. Rev. 167, 169 (1947). After laboring on this tax appeal for a while, we can understand why.

Two questions, both of a procedural nature, confront us. The first one, which appears to be a matter of first impression, is whether the existing statutory and regulatory framework entitles a taxpayer to a pre-assessment determination of her liability by the IRS under 26 U.S.C. § 6672 if she files a timely protest. If the answer to that query is yes, the second question is whether the IRS' failure to provide such a determination can be harmless. As we will see, framing the questions is a lot easier than answering them.

## I

When an employer withholds income, Social Security, and Medicare taxes from its employees' wages, as federal law requires, it must place those funds in trust and remit them to the IRS at particular intervals. *See* 26 U.S.C. § 7501; *Oppliger v. United States*, 637 F.3d 889, 892 (8th Cir. 2011).  If the employer fails to pay those taxes, the IRS has a number of options available to it. One such option, pursuant to 26 U.S.C. § 6672(a), is to collect the amount due from "[o]fficers or employees responsible for the collection and payment of withholding

2

taxes who willfully fail to do so," and make them "personally liable for a 'penalty' equal to the amount of the delinquent taxes." *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir. 1990). *See also Slodov v. United States*, 436 U.S. 238, 244–46 (1978) (explaining that § 6672(a) is one of several remedies available to the IRS when an employer fails to remit taxes that have been withheld). Although it is called a penalty, the sum due under § 6672(a) "is not penal in nature," as it is "simply a means of ensuring the tax is paid." *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir. 1986) (internal quotation marks and citations omitted).

## A

This appeal revolves around the effect and validity of a tax assessment rendered by the IRS. Before we set out the facts, therefore, we provide some background on what an assessment is under the Internal Revenue Code and how it impacts the IRS' ability to collect unpaid taxes. We hope this background will make it easier to put the relevant facts in proper context.

The Code does not define the term "assessment," but the Supreme Court has explained that an assessment, "[a]s used in the . . . Code, . . . [is] a 'recording' of the amount the taxpayer owes the government." *Hibbs v. Winn*, 542 U.S. 88, 100 (2004). The Secretary of the Treasury makes an assessment by "calculat[ing] the proper amount of liability and record[ing] it in the Government's books." *United*

3

*States v. Galletti*, 541 U.S. 114, 122 (2004). We have therefore described an assessment as "more or less a bookkeeping procedure." *William-Russell & Johnson, Inc. v. United States*, 371 F.3d 1350, 1353 (11th Cir. 2004).

An assessment "is not a prerequisite to tax liability . . . [and is] only a formal determination that a taxpayer owes money." *Id.* Nevertheless, it is significant under the Code because it "serves as the trigger for levy and collection efforts." *Hibbs*, 542 U.S. at 102. *See also Galletti*, 541 U.S. at 122–23 ("After the amount of liability has been established and recorded, the IRS can employ administrative enforcement methods to collect the tax."). Once an assessment has been made, "a lien arises against 'all property and rights to property' belonging to the person against whom the assessment was made." *Huckabee Auto.*, 783 F.2d at 1549.

In 1996, Congress amended § 6672 as part of the Taxpayer Bill of Rights II (TBOR2), Pub. L. No. 104-168, 110 Stat. 1452 (1996), in an effort to increase protections for taxpayers under the Internal Revenue Code. *See* H.R. Rep. 104-506, at 1145 (1996). As a result of the amendment, § 6672(b) now requires the IRS to notify a taxpayer that she shall be subject to an assessment before it can impose a penalty. The IRS must also wait 60 days from the date of the notice letter before making an assessment. *See* 26 U.S.C. § 6672(b)(1)-(2). *See also Moore v. United States*, 648 F.3d 634, 639 (8th Cir. 2011) (explaining that "[§] 6672(b) prohibits the government from imposing a penalty unless [it] notifies the taxpayer he is

4

subject to an assessment in writing by mail or in person, at least 60 days before demanding payment").

The IRS has a three-year statute of limitations for making assessments under § 6672. The limitations period begins to run from the date of the filing of the tax return or the due date of the return, whichever is later. *See* 26 U.S.C. § 6501(a). Any assessment made by the IRS beyond the applicable three-year period is invalid, and the taxpayer is not obliged to pay. *See William-Russell & Johnson*, 371 F.3d at 1351; *Hoffman v. Comm'r of Internal Revenue*, 119 T.C. 140, 144 (T.C. 2002). As part of the 1996 amendment, Congress extended the statute of limitations for an assessment in situations where the taxpayer files a timely protest to the IRS' pre-assessment notice. In such cases, the IRS has an additional 30 days—from when it makes a "final administrative determination" on the taxpayer's pre-assessment protest—to assess the taxpayer. *See* 26 U.S.C. § 6672(b)(3)(B).[1]

Before any levy can be made on a taxpayer's property or right to property, the IRS must provide the taxpayer with notice of her right to a collection due process or CDP hearing under 26 U.S.C. § 6330 at least 30 days before the levy is made. *See* 26 U.S.C. § 6330(a)(1), (2)(C). A taxpayer has the right to "request a

---

[1] Under the IRS Manual, a "TBOR2 protest is considered timely if it is mailed on or before the 60th day (75th if outside of the United States) . . . . The 60-day period is measured from the mailing date of the Letter 1153 or from the delivery date if Letter 1153 is delivered in person." IRM § 8.25.1.5(6) (2013).  A Letter 1153 is the means by which the IRS typically provides notice pursuant to § 6672(b). *See Moore*, 648 F.3d at 640 & n.5.

[CDP] hearing during the 30-day period [provided by the notice]." 26 U.S.C. § 6330(a)(3)(B). *See also Dalton v. Commissioner*, 682 F.3d 149, 154–55 (1st Cir. 2012) ("Congress inaugurated [the CDP process] in 1998 as part of a legislatively crafted 'Taxpayer Bill of Rights'. . . [and] prior to that time, the IRS could reach a delinquent taxpayer's assets by lien or levy without providing any sort of pre-attachment process, . . . [which] created a potential for abuse.").

**B**

From July of 2002 to June of 2005, Linda Romano-Murphy served as the chief operating officer of Nurses PRN, LLC, a healthcare staffing business that employed nurses and arranged for them to work at various hospitals on a temporary basis. Ms. Romano-Murphy controlled NPRN's finances and signed all federal income and employment tax returns for the company. NPRN struggled financially and failed to timely pay its taxes, particularly income, Social Security, and Medicare taxes that were withheld from its employees' wages.

In July of 2005, NPRN filed a quarterly employment-tax return (a Form 941) for the second quarter of 2005. The return, signed by Ms. Romano-Murphy, reported a total employment-tax liability of $609,832.01 for that time period. After unsuccessfully seeking full payment from NPRN, the IRS sought to recover the remaining amount due from Ms. Romano-Murphy under § 6672(a).

6

To that end, in July of 2006 the IRS sent Ms. Romano-Murphy a Letter 1153 (notice of proposed assessment) informing her that, pursuant to § 6672(a), she—as the chief operating officer of NPRN—was personally responsible for the company's unpaid trust fund taxes for the second quarter of 2005. The IRS informed Ms. Romano-Murphy that it intended to make an assessment against her in the amount of $346,732.38.

The IRS also advised Ms. Romano-Murphy in the letter that, if she did not agree with the proposed assessment, she had "the right to appeal or protest this action." The letter explained that, in order to preserve her right to appeal her case to the local Appeals Office, she needed to mail a formal written protest to the IRS within 60 days from the date of the letter. The letter listed all the information Ms. Romano-Murphy would need to include in a formal written protest, including a request for a conference, a list of findings she disagreed with, and a statement explaining why she disagreed with the IRS' findings and why a penalty should not be imposed.

Finally, the IRS explained to Ms. Romano-Murphy that, if she filed a protest and requested a conference to dispute liability, she was entitled to represent herself at the conference or have another qualified individual (an attorney, a certified public accountant, or another person enrolled to practice before the IRS) represent her. If Ms. Romano-Murphy and the IRS "still disagree[d] after [the] conference,

7

[the IRS] w[ould] send [her] a bill. However, by following the procedures outlined in the letter, [she could] take [her] case to the United States Court of Federal Claims or to [the] United States District Court."[2]

On September 6, 2006, Ms. Romano-Murphy filed a timely and written protest with the IRS. She requested "a conference to discuss the supporting documents contained with[ ] [her formal written protest]," disputed the IRS' findings regarding the "[c]alculation of the trust fund monies owed," and explained how, in her view, the IRS erred in (1) determining the total amount of trust fund taxes owed and (2) calculating the penalty charges against her. In other words, she provided all the information the IRS requested.

Due to some unexplained error, the IRS did not forward Ms. Romano-Murphy's formal written protest to its Appeals Office, which exclusively handles taxpayers' pre-assessment protests under § 6672(b). The Appeals Office, therefore, never considered the protest, and Ms. Romano-Murphy was not given a pre-assessment conference or a final administrative determination as to her protest.

On October 15, 2007, having failed to address or resolve her protest, the IRS made an assessment against Ms. Romano-Murphy in the amount of $346,732.38 (the amount stated in the Letter 1153). Ms. Romano-Murphy wrote the IRS several

---

[2] *See, e.g.*, 28 U.S.C. 1346(a)(1) (giving district courts jurisdiction in any civil action against the United States for the recovery of any internal revenue tax "alleged to have been erroneously or illegally assessed or collected").

more letters protesting the assessment, but those letters went unanswered and the IRS placed a lien on her property.

Almost a year later, in August of 2008, the IRS served Ms. Romano-Murphy with notice of its intent to levy to collect the penalty for NPRN's outstanding trust fund taxes. Shortly thereafter, in September of 2008, Ms. Romano-Murphy received notice of the federal tax lien filing against her to collect $346,668.23.[3]

## C

In early September of 2008, Ms. Romano-Murphy filed a timely request for a CDP hearing pursuant to § 6330 to contest her liability under § 6672(a). In her request for a hearing, she challenged both the August 2008 proposed levy against her and the September 2008 notice of the filing of a federal tax lien. She argued that the penalty assessment was erroneous and disputed the lien. In part, she asserted that the trust fund taxes for the second quarter of 2005 were covered as part of a June 2005 settlement between NPRN and the IRS.

Ms. Romano-Murphy received a § 6330 CDP hearing with the IRS Appeals Office in February of 2009. At the hearing, she disputed her liability under § 6672(a) for the assessed penalty. The Appeals Office noted during the hearing that, although Ms. Romano-Murphy had filed a timely pre-assessment protest, the IRS

---

[3] The record does not shed any light as to why the amount listed in the notice was a little less than the amount assessed on October 15, 2007.

had never given her the opportunity to dispute her liability prior to making an assessment. Because the proposed assessment had never been reviewed, the Appeals Office conducted a post-assessment (and post-lien) review of Ms. Romano-Murphy's challenges to liability and to the amount of the penalty.

On October 28, 2009, the IRS and Ms. Romano-Murphy participated in a telephone conference. During the conference, the IRS told Ms. Romano-Murphy that after reviewing the assessment of her civil penalty and considering the issues she raised in her written protest, it found her liable for the outstanding trust fund taxes for the second quarter of 2005.

The IRS also advised Ms. Romano-Murphy that it had reviewed her financial information, and that her total liability could be paid by making monthly payments of $4,575. She indicated she would try to obtain a lower payment plan.

On November 20, 2009, the Appeals Office mailed Ms. Romano-Murphy a letter with its unfavorable determination, memorializing much of the information provided to her during the earlier telephone conference. The letter informed her that the Appeals Office had sustained the notice of the federal tax lien balance and the notice of intent to levy. As a result, Ms. Romano-Murphy owed the IRS $346,732.38 for NPRN's unpaid tax liability.

10

**D**

Ms. Romano-Murphy sought review of the Appeals Office's determination in the tax court. In December of 2012, the tax court sustained the Appeals Office's finding of liability, and held that Ms. Romano-Murphy was liable under § 6672(a) for the penalty. The tax court observed that "[b]ecause [Ms.] Romano-Murphy had not had a prior opportunity to dispute the . . . penalty assessed against her, the Appeals Office [had] allowed [her] to contest the penalty" in the CDP proceeding.

Ms. Romano-Murphy then filed a motion to vacate the tax court's order. In relevant part, she argued in her motion that the order should be set aside because the collection of a tax liability, pursuant to 26 U.S.C. § 6502, can only occur after an assessment has been made, and the 2007 assessment in her case was invalid "due to a procedural error and expiration of assessment statute dates." The assessment, she maintained, was invalid because the IRS had failed to give her a pre-assessment hearing and determination when she filed her timely protest, "which [was] her right by law." This procedural error, Ms. Romano-Murphy argued, denied her due process and prejudiced her in a number of ways.

The tax court denied Ms. Romano-Murphy's motion to vacate on the merits. It held that "[§] 6672(b)(3)(B) does not require the IRS to delay assessment [when a taxpayer files a timely pre-assessment protest]," essentially concluding that taxpayers have no statutory right to a pre-assessment hearing or to a final

11

administrative determination of a pre-assessment protest. The tax court, therefore, determined that the IRS' October 2007 assessment was valid. Ms. Romano-Murphy, appearing pro se, appeals from that ruling.

## II

Ms. Romano-Murphy does not dispute the tax court's substantive grounds for affirming her liability under § 6672(a). Nor does she challenge the amount of the penalty under the statute. Instead, she argues that the 2007 assessment was invalid because the IRS denied her a hearing and failed to make a final administrative determination on her timely protest before making an assessment, issuing notice of its intent to levy, and filing a tax lien against her. Based on that argument, she requests that we invalidate the 2007 assessment. The IRS responds that it was only required to provide Ms. Romano-Murphy with pre-assessment notice, and that she did not have a right to a pre-assessment hearing or determination. Alternatively, the IRS contends that any error in denying Ms. Romano-Murphy such a hearing or determination was harmless because she was subsequently able to challenge her liability and the amount of the penalty at the CDP hearing.

We typically review a tax court's denial of a motion to vacate for abuse of discretion. *See Bragg v. Comm'r of Internal Revenue*, 856 F.2d 163, 165–66 (11th Cir. 1988). But where, as here, the tax court denied the motion to vacate based on

12

its interpretation of the Internal Revenue Code, our review of that interpretation is plenary. *See Davenport Recyling Assocs. v. Comm'r of Internal Revenue*, 220 F.3d 1255, 1258–59 (11th Cir. 2000). *Cf. In re Mouzon Enter., Inc.*, 610 F.3d 1329, 1332 (11th Cir. 2010) (reviewing bankruptcy court's disposition of debtor's motion to vacate *de novo* because it was based on an interpretation of the Federal Rules of Bankruptcy Procedure).

After reviewing the parties' briefs, the record, the relevant statutory and regulatory provisions, the IRS' manual and procedures, and with the benefit of oral argument, we conclude that Ms. Romano-Murphy was entitled to a pre-assessment determination of her § 6672 liability. The IRS therefore erred in not providing her such a determination before making the assessment and issuing its notice of intent to levy. On this record, however, we cannot determine whether the IRS' error was harmless, so we remand that issue to the tax court.

### III

Statutory interpretation begins with the text chosen by Congress. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–45 (1984); *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). We look at "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

13

The IRS acknowledges, and we agree, that under § 6672(b) taxpayers must be given notice of their proposed liability for a trust fund tax penalty prior to an assessment. *See* Br. for Appellee at 25. The statute provides that "[n]o penalty shall be imposed [under § 6672(a)] unless the Secretary notifies the taxpayer in writing . . . or in person that [he or she] shall be subject to an assessment of such penalty." 26 U.S.C. § 6672(b)(1). It also states that such "notice . . . shall precede any notice and demand of any penalty under [the section] by at least 60 days." § 6672(b)(2). *See Moore*, 648 F.3d at 639.

Although § 6672 does not contain a subsection concerning a pre-assessment hearing or determination of liability, subsection (b)(3) of the statute—entitled "Statute of limitations"—does presuppose that there will be a pre-assessment determination at some point if a taxpayer files a timely protest. It provides, in relevant part, that "if there is a timely protest of the proposed assessment," the three-year statute of limitations for making an assessment "shall not expire before . . . the date 30 days after the Secretary makes a final administrative determination with respect to such protest." § 6672(b)(3)(B). But the Internal Revenue Code would not be the tome that it is without its own intrinsic difficulties, and § 6672 does not define or explain the terms "protest" and "final administrative determination." Nor does it set out any procedures for the filing and resolution of pre-assessment protests.

14

As the IRS reads the statutory text, § 6672 allows it unfettered discretion to resolve (or not resolve) timely pre-assessment protests filed by taxpayers after they receive notice of proposed assessments. The IRS says that, despite the references in § 6672(b)(3)(B) to a pre-assessment administrative appeals process—such as "protest" and "final administrative determination"—a taxpayer does not have any right to such a process (or to a determination). The statute, says the IRS, serves only to give the taxpayer notice of her proposed liability and speaks only about the possibility of an appeals process.

In essence, the IRS maintains that it may simply ignore, disregard, or discard a taxpayer's timely protest to a § 6772(b) pre-assessment notice if it so chooses. When pressed at oral argument, the IRS asserted that it need not even establish a rational criterion by which to determine which taxpayers receive a pre-assessment opportunity to dispute their proposed liability and which ones do not. If this were correct, the IRS could arbitrarily decide to shred one of every three § 6672(b) protests that arrive in the mail, or throw out all such protests received on Fridays, without any consequences whatsoever.

We owe no deference to an agency's "mere litigating position," *William Bros., Inc. v. Pate*, 833 F.2d 261, 265 (11th Cir. 1987), and, as we explain, we cannot give our imprimatur to the IRS' claim of unbridled administrative power. The IRS candidly admitted at oral argument that its reading of § 6672(b)(3)(B)

15

would essentially render the statutory terms "protest" and "final administrative determination" meaningless, but defended this result by rationalizing that it would not be the first or last time that Congress passed a law devoid of effect.  The problem for the IRS is that we try to interpret statutory text so as to give effect to every provision enacted by Congress. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009); *United States v. McLeod*, 53 F.3d 322, 324 (11th Cir. 1995). *Cf. Griswold v. United States*, 59 F.3d 1571, 1577 (11th Cir. 1995) ("If we were to accept the IRS'[ ] innovative and inconsistent argument that the IRS must file a separate certificate of release for each lien, then these federal regulations and the IRS'[ ] operating procedures would be meaningless.").

In our view, § 6672(b)(3)(B) contemplates that there will be a pre-assessment determination of liability and notice thereof to the taxpayer if a timely protest has been filed. *See* 14A Mertens Law of Federal Income Taxation § 55:128 (2016) ("Letter 1153, Notice of Proposed Assessment, provides a taxpayer with the required notice and the means of protesting a proposed trust fund recovery penalty assessment administratively with the Service."). Statutory silence on the details as to how these procedures are to occur does not require us to shrug our collective shoulders and let the IRS act in an arbitrary fashion.

16

**IV**

For the sake of argument, as well for as the sake of completeness, we will assume that § 6672 is ambiguous as to whether the IRS must make a pre-assessment determination of liability for taxpayers who have filed timely protests. Even with that assumption, our conclusion remains the same.

We faced a similar, though not identical, ambiguity issue with the Internal Revenue Code in *Griswold*, a case which involved the release of satisfied tax liens by the IRS.   Although the statute in question "clearly contemplate[d] the filing of the notice of federal tax lien whenever a lien ha[d] arisen," we explained that "nothing in the statute addresse[d] how one removes a notice of federal tax lien from the public record in order to release the government's priority." *Griswold*, 59 F.3d at 1575–76. Because we thought the statute was ambiguous, we ultimately turned to the IRS' own regulations and manual to determine how a lien was to be released.  *See id.* at 1576–81. That approach is sound, and we use it here.

**A**

By way of illustrative examples, a Treasury regulation sets out the procedure involved when a taxpayer receives notice pursuant to § 6672(b) and files a pre-assessment protest. First, the taxpayer "receives a . . . proposed assessment of trust fund taxes (Trust Fund Penalty) pursuant to [§] 6672." 26 C.F.R. § 301.7430-3(d), Example 7 ("Administrative proceeding and administrative proceeding date").

Second, the taxpayer "requests and is granted Appeals [O]ffice consideration." *Id.* Third, the Appeals Office "considers the issues and decides to uphold [the] recommended assessment" or "upholds the [taxpayer's] position." *Id.*, Example 5 & 7. Fourth, the Appeals Office "notifies [the taxpayer] of [its] decision in writing." *Id.*, Example 7. Finally, the IRS "assess[es] the taxes." *Id.*

This Treasury regulation does not indicate that any pre-assessment hearing is required. But, by way of its examples, it does provide that, when a pre-assessment protest is filed, the IRS' Appeals Office must make a determination of § 6672 tax liability and notify the taxpayer of that determination in writing. *See Bishay v. Comm'r of Internal Revenue*, No. 7537-14L, T.C. Memo. 2015-105, 2015 WL 3505310, *6 (T.C.M. 2015) ("[T]his court has held that a taxpayer has an 'opportunity' to dispute his liability for a trust fund recovery penalty when he receives a Letter 1153."); *Giaquinto v. Comm'r of Internal Revenue*, No. 3757-11L, T.C. Memo. 2013-150, 2013 WL 2631078, *3 (T.C.M. 2013) ("A taxpayer has the opportunity to dispute his or her liability for a trust fund recovery penalty when he or she receives a Letter 1153.").

But there is more. As we explained earlier, pursuant to § 6330 a taxpayer is entitled to a CDP hearing before the IRS can levy on her property. That is important because another Treasury regulation provides, again by way of an illustrative example, that if the issue of tax liability under § 6672 is not raised

18

during a pre-assessment protest, that liability cannot be challenged at a subsequent

CDP hearing:

> Example 3. The IRS properly assesses a trust fund recovery penalty against the taxpayer. The IRS offers the taxpayer the opportunity for a conference with [the] Appeals [Office] at which the taxpayer would have the opportunity to dispute the assessed liability. The taxpayer declines the opportunity to participate in such a conference. The taxpayer is precluded from challenging the existence or amount of the tax liability in a subsequent CDP hearing.

26 C.F.R. § 301.6320-1(e)(4), Example 3 ("Matters considered at a CDP hearing").

*See also* 26 U.S.C. § 6330(c)(2)(B) (providing that at a CDP hearing the taxpayer

is allowed to "raise . . . any challenges to the existence of the amount of the

underlying tax liability for any tax period if [she] . . . *did not otherwise have an*

*opportunity to dispute such tax liability*") (emphasis added).  If a taxpayer's failure

to challenge the proposed liability or amount prior to assessment has preclusive

effect (by way of abandonment or forfeiture) at a later CDP hearing, it is difficult

to understand how or why the IRS would not be under an obligation to make a

final determination when a timely protest is made.

In our view, then, Treasury Regulations §§ 301.7430-3(d) and 301.6320-

1(e)(4) require the IRS to make a pre-assessment determination (though not

necessarily through the provision of a hearing) about a taxpayer's § 6672(a)

liability when timely protest is made. The next question is what legal effect, if any,

these Treasury regulations have.

Congress has given the Secretary of the Treasury authority to "prescribe all needful rules and regulations for the enforcement" of the Internal Revenue Code, *see* 26 U.S.C. § 7805(a), and in *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 55–57 (2011), the Supreme Court expressly held that Treasury regulations issued pursuant to this authority are entitled to deference under *Chevron*, 467 U.S. at 842–43. This means that we are obliged to follow such Treasury regulations unless they are "arbitrary, capricious in substance, or manifestly contrary to the statute." *Mayo Foundation*, 562 U.S. at 53 (citation omitted). *See also United States v. Cook*, 494 F.2d 573, 574 (5th Cir. 1974) ("A Treasury Regulation which is a reasonable interpretation of a section of the Internal Revenue Code has the force and effect of law.").

Critically, both of the Treasury regulations discussed above—§§ 301.7430-3 and 301.6320-1—were promulgated by the Secretary pursuant to 26 U.S.C. § 7805(a) after notice and comment. *See* 59 Fed. Reg. 29359-01, 29360 (June 7, 1994) (§ 301.7430-3); 67 Fed. Reg. 2558-01, 2561 (Jan. 18, 2002) (§ 301.6320-1). So they are entitled to *Chevron* deference and can only be disregarded if they are arbitrary, capricious, or manifestly contrary to the statutory text. *See Mayo Foundation*, 562 U.S. at 53.  Given that § 6672(b)(3)(B) expressly mentions the terms "protest" and "final administrative determination," we see no basis for disturbing these Treasury regulations. *Cf.  Animal Legal Def. Fund v. United States*

*Dep't of Agric.*, 789 F.3d 1206, 1218 (11th Cir. 2015) (explaining that where the statute "does not mandate a . . . procedure at all, much less prescribe the particulars of that procedure, Congress has conferred [on the agency] the discretion to implement [the procedure]") (internal quotation marks and citations omitted).

As we remarked almost 50 years ago, Treasury regulations "are binding on the Government as well as on the taxpayer." *Brafman v. United States*, 384 F.2d 863, 866 (5th Cir. 1967). Indeed, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). *See also Service v. Dulles*, 354 U.S. 363, 388–89 (1957) (reversing the Secretary of State's exercise of statutorily authorized discretion where administrative action violated self-imposed regulatory constraints in excess of statutory requirements); *Kurapati v. Bureau of Citizenship and Immigration Serv.*, 775 F.3d 1255, 1262 (11th Cir. 2014) ("Even when an agency decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations."). "This is so even where the internal [agency's] procedures are possibly more rigorous than otherwise would be required." *Morton*, 415 U.S. at 235.

**B**

If more were needed to establish that the IRS must make a pre-assessment determination of § 6672(a) liability when a taxpayer files a timely pre-assessment

21

protest, another Treasury regulation provides additional support. In relevant part, 26 C.F.R. § 601.106(a)(1)(iv) ("Appeals functions") provides that the "post-assessment appeal procedure" does not apply to penalties imposed under § 6672 of the Code "because the taxpayer has the opportunity to appeal this penalty prior to assessment." This language is consistent with the notion that the IRS must administratively resolve a taxpayer's timely pre-assessment protest. Otherwise, the filing of a protest would (as Ms. Romano-Murphy pithily suggested) amount to nothing more than a cathartic letter-writing experience for the taxpayer. We doubt that Congress, when it passed TBOR2, intended to allow taxpayers to file timely protests of their proposed liability under § 6672(b) while at the same time giving the IRS the unchecked power to refuse to address such protests for any reason (or no reason) whatsoever.

We recognize that there is caselaw holding that Treasury regulations like § 601.106, which are part of the IRS' statement of procedural rules, are "merely directory, and not mandatory." *Smith v. United States*, 478 F.2d 398, 400 (5th Cir. 1973) (addressing the former 26 C.F.R. § 601.56(a)). *See also Boulez v. Commissioner*, 810 F.2d 209, 214–15 (D.C. Cir. 1987) (explaining that the regulations in Part 601 of the Treasury regulations are issued by the Commissioner of the IRS pursuant to 5 U.S.C. § 301 "without need for approval by the Secretary" and "serve merely as guidelines for conducting the internal affairs of the agency");

22

*Einhorn v. DeWitt*, 618 F.2d 347, 349–50 (5th Cir. 1980) (same).  But we are not relying on § 601.106(a)(1)(iv) to independently establish a taxpayer's right to a pre-assessment determination of liability.  We are merely noting that this regulation is consistent with our reading of § 6672(b) and the Treasury regulations that we must follow under *Chevron*.

Finally, there is the Internal Revenue Manual.  Though it does not have the force of law, it too is "persuasive authority," *Griswold*, 59 F.3d at 1576 n.8, and provides more detailed information regarding how § 6672(b)(3)(B) pre-assessment protests are processed and managed by the IRS' Appeals Office.

The Manual explains that "[p]re-assessment [trust fund tax penalty] appeals [are] referred to as TBOR2 cases," and that a taxpayer has 60 days to file a timely pre-assessment protest. *See* IRM § 8.25.1.5(6). The Manual provides that the Appeals Office is the "sole" entity that may make the "final administrative determination" for purposes of § 6672(b)(3)(B). *See* IRM § 8.25.1.6.2(4). According to the Manual, when a TBOR2 protest is filed, the IRS reviews the administrative file in detail prior to holding a conference with the taxpayer. *See* IRM § 8.25.2.4(1). If the taxpayer requests a pre-assessment conference, the conference can take place either in person, by phone, or correspondence, at the election of the taxpayer. *See* IRM § 8.25.2.5(1). The taxpayer may choose to be represented by counsel or a certified accountant at the conference. *See* IRM §

23

8.25.2.5(a). If, after the conference, the Appeals Office finds the taxpayer liable, the IRS prepares an appeals case memorandum, which shall "provide a complete explanation of the case presented by Collection, the taxpayer's protest and the reason for [the Appeals Office's] decision." IRM § 8.25.2.7.

If the taxpayer does not agree with the memorandum and evaluation of the Appeals Office, the Appeals team manager assigned to the case closes the protest and begins the assessment period by preparing a closing letter for the unagreed trust fund recovery penalty and signing a Form 5402, which sets out the reasons for the Appeals Office determination. *See* IRM § 8.25.2.8(3). The team manager's signature on the Form 5402 is the "final administrative determination" under § 6672(b)(3)(B). *See* IRM § 8.25.1.6.2(5). *See also* IRS Chief Counsel Advice 200930044, 2009 WL 2200228 (July 24, 2009) ("[T]he decision to either concede or sustain all or part of the proposed penalty by the Appeals function constitutes a 'final administrative determination' under the current IRM procedures."); IRS Chief Counsel Advice 200915035, 2009 WL 965872 (Apr. 10, 2009) ("The date the [Appeals team manager] signs the customized Form 5402 sustaining the liability constitutes the final administrative determination for purposes of section 6672(b)(3)(B).").

24

## V

By failing to make a pre-assessment determination of liability following Ms. Romano-Murphy's timely protest, the IRS violated § 6672(b) and the binding Treasury regulations promulgated by the Secretary (as well as the regulations setting out the appeals procedures and the IRS Manual). Ms. Romano-Murphy contends that this violation requires us to invalidate the October 2007 assessment. The IRS maintains that any error was harmless because Ms. Romano-Murphy's challenges to liability and the amount of the penalty were considered and rejected at the subsequent CDP hearing. There is no foul, says the IRS, where there is no actual harm, and there is no harm because Ms. Romano-Murphy no longer challenges her liability or the amount of the penalty.

Because of its ruling, the tax court did not address whether the IRS' error, under the circumstances, required invalidation of any agency action. For a number of reasons, we think that it is best for us to allow the tax court—with its greater knowledge of the Internal Revenue Code and its interlocking statutes and implementing regulations—to first weigh in on this question.

First, we are not a fact-finding tribunal, and the tax court has not made any findings concerning the prejudice that Ms. Romano-Murphy alleged that she suffered (e.g., that she had to pay more interest because interest accrues from the date of the assessment, that due to the IRS' delay she was unable to obtain prior

25

payment information because such information was kept on NPRN's online system for only 18 months, and that her credit was harmed due to the lien placed on her property). We express no view on the impact, if any, of these alleged harms, but the tax court may need to determine the existence, and extent, of these harms before figuring out whether the IRS' error was harmless.

Second, aside from the specific prejudice claimed by Ms. Romano-Murphy, there is the difficult question of what happens when the IRS violates a statutory and regulatory command that exists for the benefit of the taxpayer. And there are, we think, reasonable arguments on both sides of that question.

On the one hand, Ms. Romano-Murphy eventually did receive a pre-levy opportunity to be heard when she was given a § 6330 CDP hearing in 2009. At that hearing, the Appeals Office allowed Ms. Romano-Murphy to dispute her § 6772(a) substantive liability, as well as the amount of the proposed penalty, because she had not been afforded an opportunity to do so before. This, therefore, is not a case in which a taxpayer has been completely denied an opportunity to be heard. *Cf. Republic Nat'l Bank of Dallas v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955) (holding that the denial of the right to be heard "is a violation of due process which can never be harmless error"). And in other contexts, where an agency's failure to follow its own process and procedures does not "implicate[ ] basic due process rights," we have reviewed that failure for harmless error. *See, e.g.*, *Ala. Hosp.*

26

*Ass'n v. Beasley*, 702 F.2d 955, 958 nn.6 & 8 (11th Cir. 1983) ("Under the formulation used by most courts, procedural errors are deemed harmless unless the court has a 'substantial doubt' that the agency would not have reached the result it did."); *R.R. Concrete Crosstie Corp. v. R.R. Ret. Bd.*, 709 F.2d 1404, 1407 n.3 (11th Cir. 1983) (reviewing board's failure to follow its own regulations under the harmless error standard). *Cf. Howell v. United States*, 164 F.3d 523, 526 (10th Cir. 1998) ("We hold that any failure by the IRS to comply with its duty to provide the information set out in [26 C.F.R. §] 301.6203-1 does not render the assessment in this case invalid.").

On the other hand, "[e]xecutive agencies must comply with the procedural requirements imposed by statute," and "must respect their own procedural rules and regulations." *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000). The IRS, moreover, "is not allowed to treat two similarly situated taxpayers differently," *Powell v. United States*, 945 F.2d 374, 378 (11th Cir. 1991), and that is what the agency would be doing if it decided, as a matter of whim, to consider some pre-assessment protests and not others. Under certain circumstances assessments can be rendered invalid due to IRS error, *see, e.g.*, *Philadelphia & Reading Corp. v. Beck*, 676 F.2d 1159, 1164 (7th Cir. 1982) (holding that a premature assessment was invalid), and in at least one case we have refused to presume that an agency error was harmless. *See United States Steel Corp. v.*

27

*E.P.A.*, 595 F.2d 207, 215 (5th Cir. 1979) ("Nor can the Agency rest on the doctrine of harmless error. While that doctrine has been held applicable to review of agency actions, and has statutory sanction in the APA, it is to be used only when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of the decision reached. Here the Agency's error plainly affected the procedure used, and we cannot assume that there was no prejudice to the petitioners. Absence of such prejudice must be clear for harmless error to be applicable.") (internal quotation marks and citation omitted).

## VI

We hold that a taxpayer is entitled to a pre-assessment administrative determination by the IRS of her proposed liability for trust fund taxes if she files a timely protest. *See* 26 U.S.C. § 6672(b); 26 C.F.R § 301.7430-3(d), Examples 5 & 7; 26 C.F.R. § 301.6320-1(e)(4), Example 3; 26 C.F.R. § 601.106(a)(1)(iv); IRM §§ 8.25.1.6.2 & 8.24.2.4-7. The IRS therefore erred by not making such a determination for Ms. Romano-Murphy after she filed a timely protest. We vacate the judgment of the tax court and remand so that it can address whether the IRS' error, under the circumstances, is harmless or requires setting aside the 2007 assessment (or some lesser form of corrective action).

**VACATED AND REMANDED.**