[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11216

_____

Agency No. 018437-15 L


ALAN M. BERKUN,

Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court

_____

(May 25, 2018)

Before MARTIN, JORDAN, and WALKER,[*] Circuit Judges.

_____

[*]The Honorable John M. Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

JORDAN, Circuit Judge:

If the Internal Revenue Service intends to levy on a restitution-based assessment against a taxpayer who is imprisoned, must it provide notice to him at his prison address?  Alan Berkun, who is appealing the tax court's dismissal of his petition for review for lack of jurisdiction, believes due process requires such notice.   Alternatively, he argues that the time period for a taxpayer to appeal a notice of intent to levy begins to run only when the notice is actually received.

**I**

Mr. Berkun pled guilty in 2010 to a number of federal charges, including filing a false 2004 income tax return.  *See United States v. Berkun*, No. 1:11-cr-214 (E.D.N.Y).  The district court sentenced him to 72 months of imprisonment and ordered him to pay $390,595 in restitution to the Internal Revenue Service.

In January of 2013, Mr. Berkun sent a handwritten letter to IRS Agent Laurian Jennings.  He provided the IRS his Miami federal prison mailing address and asked that all notices in reference to his case be sent to him there.  On April 15, 2013, Mr. Berkun filed his 2012 tax return, and on April 15, 2014, he filed his 2013 tax return, both from the Federal Correctional Institution in Miami.  On both tax returns he listed his address as 9121 Equus Circle in Boynton Beach, Florida, where he lived with his girlfriend, Kimberlee Thomas, and their three children before he went to prison.

2

The IRS assigned Revenue Officer Steven Crimmins to collect the restitution-based assessment against Mr. Berkun from the false 2004 tax return. On September 15, 2014, Officer Crimmins learned that Mr. Berkun was still incarcerated at the Federal Correctional Institute in Miami. That same day, Officer Crimmins called Mr. Berkun at the prison, but no one answered the phone. Later that month, Officer Crimmins visited the Equus Circle property, but no one was there and he left his card. After this visit, Mr. Berkun's attorney contacted Officer Crimmins and told him Mr. Berkun was scheduled to be released to a halfway house some time in November.

On November 3, 2014, the IRS issued a "Notice of Intent to Levy" (NOIL) under 26 U.S.C. § 6330 to collect from Mr. Berkun the unpaid restitution assessment from 2004. The IRS sent this notice by certified U.S. Mail, with return receipt requested, to Mr. Berkun's Equus Circle address. Mr. Berkun had previously designated Ms. Thomas as a person authorized to inspect, request, and receive his confidential tax information, and she signed and returned the return receipt card on behalf of Mr. Berkun. The IRS received the signed card on November 6, 2014.

Ms. Thomas informed Officer Crimmins on November 20, 2014, that Mr. Berkun no longer lived with her at the Equus Circle property. The following day, Mr. Berkun was released from custody to home confinement in his mother's home

in Delray Beach, Florida, because Ms. Thomas said he could longer live with her at the Equus Circle property.

Mr. Berkun and Officer Crimmins first spoke on January 5, 2015.   On January 21, 2015, they met for the first time at the home of Mr. Berkun's mother. At this meeting, Officer Crimmins gave Mr. Berkun a number of tax-related documents, including a copy of the NOIL dated November 3, 2014, and a copy of the restitution-based assessment accrual with interest, reflecting a balance of $704,665.25. Mr. Berkun says he first became aware of the NOIL at this meeting with Officer Crimmins.

On February 20, 2015, the IRS received Mr. Berkun's Form 12153, "Request for a Collection Due Process or Equivalent Hearing," regarding the NOIL. When Mr. Berkun filed the form, Officer Crimmins recorded the following entry:

> Will process and forward [Mr. Berkun's Form] 12153 to appeals. Appeal is timely because the taxpayer received the [NOIL] when I hand delivered it on 1/22/15 and the CDP was received on 2/20/2015. When the original [NOIL] was mailed it was sent to the address of his girlfriend at Equus Circle in Boynton Beach. He was in prison at the time and never received it.

Despite Officer Crimmins' view, the IRS Office of Appeals concluded that Mr. Berkun's appeal was untimely. Counting from November 3, 2014, the date the NOIL issued, the Office of Appeals concluded that Mr. Berkun's attempt to protest

4

the collection action was beyond the statutory 30-day period allowed for a "Collection Due Process" hearing under 26 U.S.C. § 6330(b)(1). On April 30, 2015, the Office of Appeals, therefore, held a telephonic "equivalent hearing," rather than a CDP hearing, with Mr. Berkun to discuss his concerns about the timing of his receipt of the NOIL and the merits of the levy action. Mr. Berkun had a second telephonic discussion with a settlement officer from the Office of Appeals on May 12, 2015.

The IRS issued its decision letter on June 18, 2015. The decision letter, which explained the findings of the Office of Appeals following the equivalent hearing, stated that Mr. Berkun could not petition the tax court for review of the collection action "unless he could show that [his] due process hearing request was on time."

In July of 2015, Mr. Berkun petitioned the tax court for relief under 26 U.S.C. § 6330(d)(1). The IRS moved to dismiss the petition, arguing that the tax court lacked jurisdiction because Mr. Berkun did not timely file a Form 12153 in accordance with 26 U.S.C. § 6330 and 26 C.F.R. § 301.6330-1(i)(1). The tax court granted the IRS' motion to dismiss on April 15, 2016. Less than one month later, Mr. Berkun moved to vacate the dismissal order and submitted a memorandum of law in support. On December 16, 2016, the tax court denied the motion to vacate. This petition for review followed.

## II

We review the tax court's order of dismissal "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). That means we exercise plenary review as to whether the tax court correctly dismissed Mr. Berkun's petition for lack of jurisdiction under 26 U.S.C. § 6330(d)(1). *See Creel v. Commissioner*, 419 F.3d 1135, 1139 (11th Cir. 2005). *See also Romano–Murphy v. Commissioner*, 816 F.3d 707, 714 (11th Cir. 2016).

## III

Mr. Berkun presents two arguments in support of his position that the tax court had jurisdiction over his petition for relief. We address each in turn.

## A

Mr. Berkun contends that the IRS failed to comply with constitutional due process requirements because it did not mail the NOIL to him at his Miami prison address. He relies on *Dusenbery v. United States*, 534 U.S. 161, 164-69 (2002), in which the Supreme Court held that the government satisfied due process by mailing a notice of forfeiture to a claimant by certified mail to the prison where he was incarcerated, to the residence where the claimant's arrest occurred, and to the home where the claimant's mother lived. Citing to several unpublished Eleventh Circuit cases, he says that we have interpreted *Dusenberry* as requiring the

government to provide notice to incarcerated individuals at their prison facilities. *See United States v. Simon*, 609 F. App'x 1002, 1006 (11th Cir. 2015) ("Notice [of forfeiture] was sent to and received at the prison where Mr. Simon was incarcerated, which is sufficient to meet the constitutional requirements for notice."); *United States v. Williams*, 130 F. App'x 301, 302 (11th Cir. 2005) ("The mailed notices [of forfeiture] were sent to locations where Williams was not located, a fact the Government should have known since Williams was essentially in federal custody for the pendency of the forfeiture proceedings."). He also points to other circuit cases which have held that, in forfeiture proceedings, due process requires that notice to prisoners be directed and mailed to them at the facilities where they are detained. *See, e.g., United States v. McGlory*, 202 F.3d 664, 672, 674 (3d Cir. 2000) (*en banc*); *Weng v. United States*, 137 F.3d 709, 714 (2d Cir. 1998).

Because the IRS mailed the NOIL to the Equus Circle address rather than to him in prison, Mr. Berkun contends that he was denied due process of law, and that the IRS was prohibited from levying his assets until Officer Crimmins personally served him with the NOIL on January 21, 2015. *See* 26 U.S.C. § 6330(a)(2)(A) (stating that one possible method for the required notice is delivery "in person"). As a result, he continues, the 30-day period for him to request a CDP hearing did not begin to run until that date, and his Form 12153, filed on February 20, 2015,

7

was timely.  That means he was entitled to a CDP hearing (the result of which is reviewable in the tax court) rather than just an equivalent hearing before the IRS Office of Appeals.  *See* 26 U.S.C. § 6330(b).  Mr. Berkun essentially asks that we treat the equivalent hearing as a CDP hearing, and the IRS decision letter as a notice of determination, which would give the tax court jurisdiction to review his petition for relief.  *See Craig v. C.I.R.*, 119 T.C. 252, 259 (2002) (treating a decision letter as a notice of determination where the petitioner timely requested a CDP hearing).  Under this paradigm, he says, the tax court should not have dismissed his petition for lack of jurisdiction.

With respect to the merits of this argument, the IRS responds that *Dusenbery* and the other cases cited by Mr. Berkun all address the adequacy of notice to defendants/claimants in administrative forfeiture actions, not tax collection actions. The IRS maintains that these forfeiture cases "have no bearing on whether, for purposes of § 6330, [it] properly mailed the notice of intent to levy to [the] taxpayer's last known address."  Br. for the Commissioner at 37.

According to the IRS, the NOIL was properly sent to Mr. Berkun by certified mail to his last known address – the Equus Circle address listed on the 2013 tax return, which was filed in April of 2014.  *See* 26 U.S.C. § 6330(a)(2)(C). The IRS relies on Treasury regulations which state that "a taxpayer's last known address is the address that appears on the taxpayer's most recently filed and

8

properly processed Federal tax return." 26 C.F.R. § 301.6212-2. *See also* 26 C.F.R. § 301.6330-1(a)(1). Because Mr. Berkun did not file a request for a CDP hearing within 30 days of November 3, 2014, he was not entitled to such a hearing or to a notice of determination, and, therefore, had no right to request review by the tax court. *See* 26 U.S.C. §§ 6330(b)(1), (d)(1).

The IRS maintains that it properly conducted an equivalent hearing for Mr. Berkun, after which it properly sent him a decision letter. The tax court, the IRS says, correctly recognized that it lacked subject-matter jurisdiction to entertain Mr. Berkun's petition because a decision letter issued after an equivalent hearing is not subject to judicial review. *See United States v. Giaimo*, 854 F.3d 483, 485 n.2 (8th Cir. 2017) ("The determination from an equivalent hearing is not a formal 'Notice of Determination,' but rather, is a 'Decision Letter' and generally is not judicially reviewable.").

Mr. Berkun's argument that due process requires the IRS to send NOILs to incarcerated taxpayers at their prison addresses presents one plausible application of *Dusenbery* and its progeny, particularly in a situation like this one where the incarceration is based in part on a criminal tax offense and the taxpayer has requested the IRS to send tax correspondence to his place of incarceration. On the other hand, there is the added wrinkle of Mr. Berkun listing the Equus Circle property as his address on his 2012 and 2013 tax returns.

9

We leave the due process issue for another day because Mr. Berkun never raised it in the tax court.  He did not assert it in his response to the IRS' motion to dismiss or in his motion to vacate.  *See* R. 6 at 1; R. 15 at 2-3.  We therefore do not think it is appropriate for us to address it for the first time on appeal.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

**B**

Mr. Berkun also advances an argument as to § 6330 based on the legislative history of the bill which became the IRS Restructuring and Reform Act of 1998.  He asserts that, according to the bill's conference report, for the purpose of CDP hearings the Conference Committee was concerned with actual receipt of notices of deficiency, rather than simply constructive receipt accomplished through mailing notice to a taxpayer's last known address. *See* H.R. Rep. No. (Conf.) 105-599 at 264-66 (1998); 105 Cong. Rec. 144-53 at S4163 (1998).  Building on this reading of the legislative history,  Mr. Berkun contends that the Treasury regulations on which the tax court relied in dismissing his petition do not apply if the taxpayer does not receive the NOIL during the 30-day appeal period.  Alternatively, he argues that if these regulations do apply, they are unreasonable constructions of the governing statutes and should not receive deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837

(1984), or they fail as an unreasonable interpretation of the text, structure, and purpose of the statutes.

The IRS responds that, as with the due process claim, Mr. Berkun is making an argument that he failed to properly present in the tax court. On the merits, the IRS maintains that the tax court correctly based its original order of dismissal on the language of § 6330, the Treasury regulations, and precedent. And it concurs with the tax court's comment that Mr. Berkun's legislative history theory "raises more questions than it answers." R. 20 at 1.

We agree with the IRS that Mr. Berkun did not properly preserve his legislative history argument in the tax court because he first presented it in his motion to vacate the order of dismissal. Tax Court Rule 162 permits a party to move to vacate a decision of the tax court in certain circumstances, such as when "(1) the decision is shown to be void or a legal nullity for lack of jurisdiction over either the subject matter or a party; (2) there has been fraud on the court; or (3) the decision was based on mutual mistake." *Davenport Recycling Assocs. v. Comm'r*, 220 F.3d 1255, 1259 (11th Cir. 2000). But a party "waive[s] [an] argument by first including it in a motion under Tax Court Rule 162." *Johnson v. Comm'r*, 289 F.3d 452, 455 (7th Cir. 2002). Because Mr. Berkun failed to raise the legislative history argument in his response to the motion to dismiss, the tax court was within its discretion to deny Mr. Berkun's motion to vacate, and we have no occasion to

11

address the argument ourselves. *See generally O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) (holding that motions to vacate or amend a judgment "should not be used to raise arguments which could, and should, have been made before the judgment was issued"); *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) (holding that a motion to reconsider should not be used to set forth new theories of law).

## IV

We do not reach the due process or legislative history arguments because Mr. Berkun did not properly raise them in the tax court. Given the lack of any substantive ruling on our part, this may seem like an opinion "about nothing." *Cf. Seinfeld: The Pitch* (NBC television broadcast Sept. 16, 1992). And maybe it is. But we have chosen to publish it because the issues that Mr. Berkun attempts to raise on appeal may deserve attention from the bench and bar.

Mr. Berkun's petition is denied.

**PETITION DENIED.**