ALAMO EXPRESS, INC., Brown Express, Inc. and Southwestern Motor Transport, Inc., Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

No. 79–2740

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 6, 1980.

Robinson, Felts, Meyers, Starnes & Latting, Phillip Robinson, Joseph H. Hart, Austin, Tex., for Brown Express, Inc.

Jones, Mays & Capps, Damon R. Capps, Houston, Tex., for Alamo Express, Inc.

Ewell H. Muse, Jr., Austin, Tex., for Southwestern Motor Transport, Inc.

James M. Doherty, Austin, Tex., for intervenor—Red Arrow Freight Lines, Inc.

Kenneth G. Thomas, Lubbock, Tex., for intervenor—Time-DC, Inc.

John H. Shenefield, Asst. Atty. Gen., Griffin B. Bell, Atty. Gen., Margaret G. Halpern, John J. Powers, III, U. S. Dept. of Justice, Washington, D. C., James P. Tuite, H. Glenn Scammel, I.C.C., Washington, D. C., for respondents.

Leroy Hallman, Dallas, Tex., for intervenor.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

On May 1, 1979, the Interstate Commerce Commission ("ICC") granted an emergency temporary authority ("ETA"), pursuant to 49 U.S.C. § 10928 (1976), to T.I.M.E.–DC to

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

transport automobile parts and accessories. *T.I.M.E.–DC, Inc. Extension—Laredo Automotive Parts,* Docket No. MC–35320 (R–20). The authority permitted transportation between Detroit, Michigan, and the international boundary at Laredo, Texas.

The ETA was granted without notice and an opportunity for input by existing carriers in accordance with the ICC's *Notice of Elimination of Notification Procedure in the Processing of Emergency Temporary Authority Applications under 49 U.S.C. § 10928* ("Notice of Elimination"), which was published in the Federal Register in December of 1978. 43 Fed.Reg. 58701 (Dec. 15, 1978). At least two subsequent extensions of the ETA have been granted, and a petition for reconsideration, filed by Petitioners, has been denied by the ICC. Petitioners seek to have the grant of the ETA vacated and we believe they are so entitled.

This court has recently vacated the Notice of Elimination for failure to comply with the Administrative Procedure Act (APA). *Brown Express, Inc. v. United States,* 607 F.2d 695 (5th Cir. 1979). Nevertheless, the government argues that the grant of the ETA is not invalid even though the ICC failed to follow its forty-year practice of giving existing carriers telephonic notice and an opportunity to comment on the need for additional service. Our attention has been directed to *American Farm Lines v. Black Ball Freight,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970).

*American Farm Lines* involved a grant of temporary authority by the ICC when the applicant had not fully complied with ICC procedural rules. Specifically, the rules required each application to be accompanied by supporting statements of shippers, each of which contained at least eleven items. Among the required items were (1) whether efforts had been made to secure the service from other carriers, the dates and the results of those attempts, and (2) the names, addresses and reasons given by any carrier which failed or refused to provide the service. The application in *American Farm Lines* was supported by a statement of the Department of Defense ("DOD") which ex-

plained the need for the most expeditious service and the inadequacies of existing service. However, the statement did not give the dates of the DOD's efforts to secure service from existing carriers or a complete list of the names and addresses of the carriers which failed or refused to provide the service. The court noted that this would have been a monumental undertaking given the volume of the traffic involved. *Id.* at 537–38, 90 S.Ct. at 1291–1292.

The *American Farm Lines* majority observed that the failure to provide these specifics did not so prejudice existing carriers that they could not offer objections; their objections spanned 156 pages of the record. Nor was the statement so devoid of information that it, in conjunction with the existing carriers' protestations, could not support a finding that the applicant's service was required.

Neither observation applies in this case. The failure to notify existing carriers, pursuant to well-established ICC practice, financially impacted them without offering any opportunity to respond. In addition, without some input from competing carriers, the likelihood of an informed finding of need is substantially diminished.

The *American Farm Lines* Court went on to note that the rules involved there were adopted for the purpose of providing the ICC with the necessary information to reach an equitable result, rather than to confer important procedural benefits on individuals in the face of otherwise unfettered agency discretion. Consequently, relaxation of the procedural rules, promulgated for the orderly transaction of business before the agency, was unreviewable absent a showing of substantial prejudice. *Id.* at 538–39, 90 S.Ct. at 1292–1293.

The ICC practice of offering telephonic notice and opportunity to comment to existing carriers does involve the extension of important procedural benefits in addition to its information gathering role. It prevents existing carriers from suffering the adverse economic consequences of an additional, sanctioned carrier, along a given route, before they have had an informal opportunity

to express their views on the need for another carrier. Since this practice contains this latter aspect, action taken by the ICC without compliance with the procedure is invalid. *Morton v. Ruiz*, 415 U.S. 199, 231–36, 94 S.Ct. 1055, 1072–1075, 39 L.Ed.2d 270 (1974); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–973, 3 L.Ed.2d 1012 (1959); *Gulf States Mfrs. Inc. v. NLRB*, 579 F.2d 1298, 1308–09 (5th Cir. 1978).

Even if the sole purpose of providing telephonic notice and opportunity to comment was to collect information, the substantial prejudice to existing carriers in terms of lost revenue, resulting from the grant of the ETA and two extensions before they had an opportunity to offer input, would permit review of abolition of the practice under *American Farm Lines*. Since the abolition of the practice in the form of the Notice of Elimination has already been held to violate the APA in *Brown Express, Inc.*, a grant of an ETA pursuant to the Notice of Elimination should likewise be invalid. An attempt to divorce the grant from the Notice of Elimination only after *Brown Express, Inc.* has been decided smacks of disingenuousness. Any other holding by this court would destroy the essence of that decision. The grant was not in accordance with the procedure required in this circuit and, therefore, was invalid. 5 U.S.C. § 706(2)(D) (1976).

A more difficult problem is presented by the government's assertion that any prejudice to existing carriers has been remedied when they were afforded an administrative appeal seeking revocation of the ETA. However, the government's last ditch thrust to save the grant must also be rejected. It has not been shown that the relevant focus on appeal within the ICC is upon conditions as they existed immediately preceding the grant of the ETA rather than on conditions prevailing at the time of the appeal. Nor has it been shown that the standard for revoking the grant of an ETA is identical to the standard for originally granting it. We cannot say, based on the record before us, that the government has established that the prejudice was removed.

*American Farm Lines* involved a failure of an agency to adhere meticulously to all its regulations, where to do so would require a monumental undertaking, without real benefit to any party. It is far removed from this case where the failure to observe the only established practice for notifying existing carriers substantially prejudiced them.

We do not mean to suggest that the ICC was required to adopt the notification practice. But once it was established, the agency was bound to observe the procedure pursuant to a series of Supreme Court cases which stretch back as far as *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). There has been no indication that the Court is disposed differently; indeed, a recent suggestion is to the contrary. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 1471 n.14, 59 L.Ed.2d 733 (1979). If the ICC wishes to grant an ETA, let it comply with its longstanding procedure for protecting existing carriers or let it abolish the practice consonant with the APA.

We can summarize no better than by quoting from a prior opinion of this court:

When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed. (Citation omitted). This is so even when the defined procedures are " * * * generous beyond the requirements that bind such agency · * * *." (Citation omitted). For once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules. (Citation omitted). If an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand. (Citation omitted). *Pacific Molasses Co. v. F.T.C.*, 356 F.2d 386, 389–90 (5th Cir. 1966).

VACATED.