[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12583

_____

D.C. Docket Nos. 6:14-md-02557-GAP-TBS; 6:14-cv-06016-GAP-TBS


CRAWFORD'S AUTO CENTER, INC., et al.,

Plaintiffs - Appellants,


versus


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 20, 2019)

Before WILLIAM PRYOR, MARTIN, and KATSAS,[*] Circuit Judges.

MARTIN, Circuit Judge:

Plaintiffs Crawford's Auto Center, Inc. and K & M Collision, LLC are two auto body collision repair shops located in Pennsylvania and North Carolina. They brought this class action suit against dozens of insurer defendants, alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and state law fraud and unjust enrichment theories. The defendants consist of seven families of insurance companies—State Farm, Allstate, GEICO, Progressive, Farmers Insurance, Liberty Mutual, and Nationwide—but Progressive and Farmers Insurance were dismissed voluntarily from this appeal. We will refer to the remaining defendants collectively ("Defendants").

The District Court granted Defendants' motion to dismiss each of Plaintiffs' claims. Plaintiffs appeal this dismissal, as well as the District Court's decision to strike certain exhibits and its decision not to allow Plaintiffs to amend their complaint on the ground that it would be futile. After careful review, and with the benefit of oral argument, we affirm.

---

[*] Honorable Gregory G. Katsas, United States Circuit Judge for the D.C. Circuit, sitting by designation.

## I.    BACKGROUND

### A.    FACTUAL BACKGROUND

Defendants are obligated to indemnify collision losses under their insurance claimants' policies.  In the event the claimants' vehicles can be repaired, the vehicles must be restored to pre-loss or pre-damaged condition.  Plaintiffs allege Defendants have the option to repair the vehicles or pay for the repairs, but they choose to pay for the repairs—performed by collision repair shops—because this protects them from liability for such repairs.  Each defendant insurer group has a direct repair program ("DRP").  These programs are composed of collision repair shops around the country that agree to "certain uniform standards and procedures in the repairs covered by" Defendants.  In return for entering into these agreements, Defendants refer a consistent volume of repair work to the collision repair shops that participate in each Defendant's respective DRP.  Plaintiffs have not entered into such agreements with Defendants and are not part of any of Defendants' DRPs.

Plaintiffs' complaint describes a scheme that enables Defendants to pay as little for repairs as possible.  They allege that this scheme harmed non-DRP collision repair shops, like Plaintiffs, because non-DRP shops "expect to be compensated at a rate that is commensurate with the standard of repairs that they are performing."  Plaintiffs say Defendants "have created a unilateral solution to

3

achieve their goal of cost savings" by instituting policy language "qualifying their obligation" to pay only the prevailing rate.  Plaintiffs allege these "prevailing rates" are artificial, and Defendants use the rates to misrepresent to both insurance claimants and collision repair shops what is necessary to properly repair and restore the damaged vehicles to pre-loss condition.  Under Plaintiffs' theory, Defendants' scheme allows them to pay less for the repairs than what Plaintiffs believe they are owed.

Plaintiffs recount that in order to establish the prevailing rate, Defendants work with three auto data companies referred to as the "Information Providers".[1] The Information Providers gather data about things like labor rates and material costs, and put that data into estimating software programs that are then sold to Defendants, DRP collision repair shops, and non-DRP collision repair shops. Defendants and "the vast majority" of collision repair shops then use this software to estimate the cost of automobile repairs.  Plaintiffs claim the Information Providers' software is supposed to be neutral, but in practice is not.  This is because, as Plaintiffs describe, most of the data uploaded into the software programs comes from Defendants' DRP collision repair shops, and those DRP shops are contractually bound to accept lower rates in exchange for a steady stream of work.  This results in estimates that are based on a "feedback loop" that does not

---

[1] The Information Providers have not been named as defendants.

4

accurately reflect rates across the industry.  Defendants and the Information Providers are thus able to "cement[] the prevailing rate" and apply it to collision repair shops who are not involved in Defendants' DRP programs.

Plaintiffs also allege that Defendants and the Information Providers skew the raw data that gets loaded into the estimating software by "scrub[bing] the estimates presented by Plaintiffs."  For example, when Plaintiffs present a repair order—which reflects the repairs required according to manufacturer guidelines and specifications—and outline the compensation for their work, they are uniformly told by Defendants that certain procedures or labor times exceed the prevailing rate.  Plaintiffs say it is by this method that Defendants are able to systematically misrepresent the prevailing rates in each repair estimate, including rates for labor, parts and materials.

Plaintiffs claim that as a result of these processes, Defendants consistently refuse to pay anything over the prevailing rate and thus have "artificially suppressed" the compensation Plaintiffs are owed.  Plaintiffs are suing Defendants for their "attempts to enforce these artificial prevailing rates" upon them because they have not agreed to Defendants' "limited, pre-defined compensation."

Plaintiffs claim Defendants' practices amount to RICO extortion and fraud, as well as common law fraud and unjust enrichment.  Plaintiffs allege that Defendants misrepresented and omitted material facts to arrive at their prevailing

5

rate for automobile repairs "for the purpose of deceiving Plaintiffs . . . to accept artificially suppressed compensation for insured repairs." Plaintiffs say they were "coerced or forced to accept suppressed compensation for insured repairs predicated on fear of economic harm, i.e., if the repair facilities wanted to do business with [Defendants]."

B.    PROCEDURAL HISTORY

Plaintiffs first filed their complaint in April 2014 in the U.S. District Court for the Northern District of Illinois. After Defendants moved to dismiss, the parties stipulated that Plaintiffs would amend their complaint. Plaintiffs filed their first amended complaint in August 2014. In December 2014, the Judicial Panel on Multidistrict Litigation transferred the action to the Honorable Gregory Presnell in the Middle District of Florida for consolidated pretrial proceedings. Defendants again moved to dismiss. The District Court, now overseeing the multidistrict litigation, granted the motion, dismissed the complaint, and granted Plaintiffs leave to amend. Plaintiffs filed their Second Amended Complaint (the "Complaint") in January 2016.

Defendants moved to dismiss for a third time. Plaintiffs filed a response to Defendants' motions with a number of exhibits attached. These exhibits included Defendants' repair estimates and Plaintiffs' repair orders. Defendants filed a motion to strike these exhibits, claiming that submitting them was "entirely

6

improper" at the motion to dismiss stage because those exhibits were neither referred to in the Complaint nor central to Plaintiffs' claims. The District Court referred the matter to a Magistrate Judge, who issued an order granting, in part, Defendants' motion to strike and excluding Exhibits E1–E7 from consideration. The District Court overruled Plaintiffs' objections to the Magistrate Judge's order and agreed with the decision to exclude Exhibits E1–E7.

Following oral argument, the District Court dismissed each of Plaintiffs' claims with prejudice for failure to state a claim. The District Court noted that the second amended complaint "told essentially the same story" as Plaintiffs' insufficiently pled first amended complaint. The District Court first dismissed Plaintiffs' RICO claims on several grounds. It held that Plaintiffs "failed to provide specifics" as to what actions any Defendant took in furtherance of the alleged RICO enterprise. It also held that Plaintiffs' extortion allegations did not satisfy the requirements of the Hobbs Act because "Defendants never obtained" the property Plaintiffs claimed they lost. And it held that Plaintiffs failed to plead their fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b). The District Court dismissed all claims with prejudice, because nothing suggested Plaintiffs "can ever overcome the[se] issues" to state a valid RICO claim.

The District Court also dismissed with prejudice Plaintiffs' state law claims for common law fraud and unjust enrichment. As with their RICO fraud claim, the

court held that Plaintiffs failed to plead common law fraud with particularity under either North Carolina or Pennsylvania law. The court also viewed Plaintiffs as having failed to plead reliance on the alleged misrepresentations, which was fatal to their fraud claim under each state's laws. The District Court dismissed Plaintiffs' unjust enrichment claim because they failed to allege they had conferred a benefit upon Defendants.

Plaintiffs timely appealed. While this appeal was pending, this Court issued its opinion in Quality Auto Painting Center of Roselle, Inc. v. State Farm Indem. Co., 917 F.3d 1249 (11th Cir. 2019) (en banc). In Quality Auto, we held that repair shop plaintiffs failed to allege viable Sherman Act antitrust claims for "collud[ing] to lower repair prices by improperly pressuring the shops to lower prices and by threatening to boycott those who do not comply," as well as common law claims for unjust enrichment and quantum meruit under New Jersey, Kentucky, Missouri, and Virginia law. Id. at 1257, 1272–74. For this appeal, our panel ordered and received supplemental briefing on the impact, if any, Quality Auto had on this case.

## II.     STANDARD OF REVIEW

This Court reviews de novo the District Court's grant of a motion to dismiss for failure to state a claim, accepting well-pleaded allegations in the complaint as true and construing them in the light most favorable to Plaintiffs. Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016). To state a claim, "a complaint

must include 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  A complaint is facially plausible when there is sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).

## III.   DISCUSSION

Plaintiffs claim that the District Court erred in dismissing all of their claims with prejudice and that the District Court should have considered Exhibits E1–E7 in deciding the motions to dismiss.  We discuss each ground in turn.

## A. PLAINTIFFS HAVE FAILED TO ALLEGE AT LEAST TWO PREDICATE ACTS OF RACKETEERING ACTIVITY.

In order to establish a RICO violation under 18 U.S.C. § 1962(c), Plaintiffs must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (per curiam) (quoting Jones v. Childers, 18 F.3d 899, 910 (11th Cir. 1994)).  To state a claim for civil damages, 18 U.S.C. § 1964(c) further requires Plaintiffs to allege (5) injury to their business or property (6) by reason of the substantive RICO violation.  Id. at 1282–83.  For this case, we need only address whether Plaintiffs have alleged a pattern of racketeering activity.  A pattern of racketeering activity under RICO requires at least two qualifying predicate acts,

9

each of which must constitute a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1).  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290–91 (11th Cir. 2010).  Plaintiffs claim they have properly pled predicate acts of wire fraud under 18 U.S.C. § 1343 and extortion under 18 U.S.C. § 1951.  See 18 U.S.C. § 1961(1).  This claim fails.

### 1.  Fraud

A person commits wire fraud when they (1) intentionally participate in a scheme to defraud another of money or property and (2) use the wires in furtherance of that scheme.  Am. Dental, 605 F.3d at 1290.  Because Plaintiffs' fraud allegations are subject to a heightened pleading standard under Rule 9(b), they must allege their RICO fraud claims with particularity.  See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) (analyzing RICO claims for mail and wire fraud).  A plaintiff satisfies Rule 9(b) if the complaint includes (1) "precisely what statements were made in what documents . . . or what omissions were made;" (2) "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making)" each statement; (3) "the content of such statements and the manner in which they misled the plaintiff"; and (4) "what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation marks omitted).

10

Plaintiffs argue they provided "specific and compelling allegations" to "sufficiently allege actionable, misleading misrepresentations," pointing to exhibits attached to their Complaint and to their response in opposition to Defendants' motion to dismiss.  But we believe the District Court got it right when it held that Plaintiffs' allegations amounted to nothing more than "vague allusions" to misrepresentations.  None of Plaintiffs' allegations—or the documents attached to their pleadings—identify "the manner in which the[se alleged statements] misled" Plaintiffs.  See id.  Even considering the exhibits appended to Plaintiffs' Complaint and opposition briefs (including Exhibits E1–E7), Plaintiffs have failed to articulate how they were misled by Defendants' estimates.  To the contrary, Plaintiffs pled their case in such a way that forecloses any finding of misrepresentations.  They affirmatively allege they received Defendants' estimates prior to performing any repairs.  They acknowledge they knew the price Defendants were willing to pay up front, and this bars their claim that Defendants misrepresented the figures in the estimates.

Additionally, and to the extent Plaintiffs rely on allegations of fraudulent omissions, their claims still fall short.  Defendants are not liable for any omissions of material fact unless they have a duty to disclose, Ziemba, 256 F.3d at 1206, and Plaintiffs alleged no such duty from any of these defendants.  As a result, Plaintiffs have failed to state a RICO claim based on the predicate act of fraud.

11

2. Extortion

To state the predicate act of extortion for their RICO claim, Plaintiffs must show a violation of the Hobbs Act, 18 U.S.C. § 1951. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1087–88 (11th Cir. 2004) (per curiam); see also 18 U.S.C. § 1961(1) (listing § 1951 as a predicate act of racketeering activity). The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Id. § 1951(b)(2). "[E]xtortion requires an intent to obtain that which in justice and equity the party is not entitled to receive." United States v. Enmons, 410 U.S. 396, 406 n.16, 93 S. Ct. 1007, 1013 n.16 (1973) (quotation marks omitted).

Plaintiffs allege that Defendants "coerced or forced the members of the Classes to accept suppressed compensation for insured collision repairs under fear that they would not be able to perform insured collision repairs presently or in the future, or if they wanted to do business with [Defendants], or if they wanted to be free from interference to their business." But Plaintiffs' extortion claim fails because they have not alleged Defendants wrongfully used actual or threatened force, violence, or fear to obtain their property. See 18 U.S.C. § 1951(b)(2).

First, Plaintiffs' suppressed compensation theory fails because they have not alleged that they parted with property that the extortionist Defendants gained

12

possession of.  Sekhar v. United States, 570 U.S. 729, 734, 133 S. Ct. 2720, 2725 (2013).  Plaintiffs alleged only that they were deprived of payments to which they were entitled, but there is no allegation those payments ever left Defendants' possession.  Plaintiffs have therefore failed to allege "both a deprivation and acquisition of property."  Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 403, 123 S. Ct. 1057, 1065 (2003).

Second, Plaintiffs' fear of economic loss theory fails because they have not sufficiently alleged wrongful conduct by Defendants.  This theory is inextricably tied to Defendants' alleged threat to steer potential customers away from Plaintiffs to DRP collision repair shops.  For example, Plaintiffs allege that a GEICO claims supervisor threatened K & M Collision by stating that GEICO "will only pay prevailing market labor rates . . . , and if the customer is not satisfied 'we'll tow the vehicle to [another] shop that [is] certified."  However, the scenario Plaintiffs describe does not fit squarely into the typical extortion case.  See Sekhar, 570 U.S. at 731–32, 133 S. Ct. at 2723–24 (noting the jury specified that the wrongful conduct related to anonymous emails demanding general counsel make a recommendation or emailer would disclose information about counsel's affair); United States v. Haimowitz, 725 F.2d 1561, 1572 (11th Cir. 1984) (defendant "pressured" victim to pay him additional $15,000 to obtain liquor license).

13

The Ninth Circuit has analyzed whether similar conduct was sufficiently wrongful to constitute extortion in Levitt v. Yelp! Inc., 765 F.3d 1123 (9th Cir. 2014).  In Levitt, small business owners sued Yelp! Inc. ("Yelp"), claiming that Yelp extorted "advertising payments from them by manipulating user reviews and penning negative reviews of their businesses."  Id. at 1126.  The Ninth Circuit recognized the well-established principle that "[t]hreats of economic harm made to obtain property from another are not generally considered wrongful where the alleged extortioner has a legitimate claim to the property obtained through such threats."  Id. at 1130 (quotation marks omitted and alterations adopted).  In other words, the term "wrongful" under the Hobbs Act "limits the statute's coverage to those instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property."  Id. at 1130– 31 (quoting Enmons, 410 U.S. at 400, 93 S. Ct. at 1009–10).  The Ninth Circuit ultimately held that the plaintiffs' allegations were not sufficient to show that Yelp threatened plaintiffs wrongfully, because Yelp had "the right to charge for legitimate advertising services," and the threat of harm that Yelp leveraged against plaintiffs "is, at most, hard bargaining."  Id. at 1134.

The Ninth Circuit's reasoning fits the facts here well, and we conclude that, at most, these Defendants drove a hard bargain.  Based on Plaintiffs' allegations, Defendants gave "warning of [their] intention to" charge certain prices, and allowed

14

Plaintiffs "the chance of avoiding the consequences." Id. at 1132 (quotation marks omitted). Plaintiffs could have refused to perform the requested repairs at the rates set by Defendants, but they did not. They went ahead and performed those repairs. This is not extortion. Cf. Quality Auto, 917 F.3d at 1273 (noting that "market power alone" is not sufficient to invalidate a contract voluntarily entered into).

On this record, Plaintiffs have not alleged predicate acts of either fraud or extortion and we must affirm the District Court's dismissal of their RICO claims.

## B. PLAINTIFFS HAVE NOT SUFFICIENTLY PLED THEIR STATE LAW CLAIMS.

Plaintiffs also appealed the common law claims they brought under North Carolina and Pennsylvania law. For the reasons set forth below, we affirm the dismissal of their fraud and unjust enrichment claims.

### 1. Fraud

To state a fraud claim under Pennsylvania law, Plaintiffs must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). Stating a fraud claim under North Carolina law requires the same elements. See Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 391 (N.C. 1988). Rule 9(b)'s

15

heightened pleading standard also applies to the North Carolina and Pennsylvania common law claims because they "sound in fraud." Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1127 (11th Cir. 2019).

Employing its reasoning for dismissing the RICO fraud claim, the District Court held that Plaintiffs also failed to plead their common law fraud claim with particularity. On appeal, Plaintiffs claim that the District Court summarily dismissed this count and argue only that the facts underlying their RICO fraud claim "are indisputably material" to their common law fraud claim. But whether these allegations are material to both the RICO and common law fraud claims is not in dispute. Plaintiffs offer their own conclusion that they have met their burden under Rule 9(b) "for the reasons outlined above under the RICO claims." However, we have already concluded they failed to state a RICO fraud claim, so we decline to address their common law fraud claim further and affirm its dismissal.

2. Unjust Enrichment

To state an unjust enrichment claim, Plaintiffs must allege (1) "benefits conferred on defendant by plaintiff," (2) "appreciation of such benefits by defendant," and (3) "acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (quotation marks omitted); see Krawiec v. Manly, 811 S.E.2d 542,

16

552 (N.C. 2018) (describing similar elements).  Plaintiffs' unjust enrichment claim is foreclosed by this Court's holding in Quality Auto.

In Quality Auto, we held that the plaintiffs could not satisfy the "unjust" element because each plaintiff "knew before it undertook the repair" that each defendant "would pay no more than State Farm would pay."  Quality Auto, 917 F.3d at 1273.  Here, Plaintiffs allege that "[b]efore a damaged vehicle is repaired, a repair appraisal—or estimate—is prepared . . . using estimating software products sold by one of the Information Providers."  Because Plaintiffs knew before they undertook each repair that Defendants would pay no more than the rates listed in the estimate, "it clearly was not unjust for the Insurance Company to pay only that and no more."  Quality Auto, 917 F.3d at 1273.

Pennsylvania and North Carolina precedent bolsters our reasoning in Quality Auto because the crux of an unjust enrichment claim is the inequitable possession of a benefit.  See, e.g., Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988) ("The benefit . . . must not be conferred . . . in a manner that is not justified in the circumstances."); Roman Mosaic & Tile Co. v. Vollrath, 313 A.2d 305, 307 (Pa. Super. Ct. 1973) (holding that plaintiff who brought a claim against a person who was not a party to the contract "must show that [the defendant] wrongfully secured or passively received a benefit that it would be unconscionable for her to retain").

17

Because Plaintiffs knew the amount Defendants would pay before they undertook each repair, we affirm the dismissal of their unjust enrichment claim.

## C. THE DISTRICT COURT DID NOT ERR BY EXCLUDING EXHIBITS E1–E7.

Plaintiffs argue that the Magistrate Judge improperly excluded Exhibits E1–E7 from consideration and the District Court erred by failing to consider Plaintiffs' objections and adopting the Magistrate Judge's order under Federal Rule of Civil Procedure 72. As Plaintiffs acknowledge, the Magistrate Judge's decision was a nondispositive ruling. In deciding whether to adopt the Magistrate Judge's order, the District Court was therefore required only to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). It was not required to perform a de novo review and neither are we.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court ordinarily may not look beyond the pleadings. United States ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 811 (11th Cir. 2015). But it may consider exhibits attached to a motion to dismiss without converting the motion into one for summary judgment if the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed. Id. Assuming that the same rule governs exhibits attached to an opposition to a motion to dismiss, the Magistrate Judge nonetheless permissibly declined to consider the disputed exhibits.

18

The Magistrate Judge found that Exhibits E1–E7 contained "copies of repair estimates generated by Defendants and repair orders created by Plaintiffs."  He reasoned that although the estimates "may turn out to be important evidence at trial," they were "not so central" to warrant consideration at the motion to dismiss stage.  We, too, are not persuaded that these exhibits were central to Plaintiffs' claims.  As Plaintiffs acknowledge, these estimates are merely examples of the data they claim to be misrepresentations, and the District Court did consider other exhibits that compiled the raw data as "representative examples" of the misrepresentations in ruling on the motion to dismiss.  More to the point, these exhibits do not help Plaintiffs overcome their problems with pleading their fraud claims, as we have discussed above.  As a result, we conclude that the District Court neither made any error of law, nor committed a clear error of judgment in affirming the Magistrate Judge's ruling.

## D. THE DISTRICT COURT DID NOT ERR BY DISMISSING THE COMPLAINT WITH PREJUDICE.

Plaintiffs claim they requested leave to amend and take issue with what they characterize as the District Court's "summary" finding that amendment would be futile.  "Ordinarily, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief,' Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), leave to amend 'should be freely given,' Fed. R. Civ. P. 15(a)."  Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262 (11th Cir. 2004).

19

However, the District Court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.  Id. (citing Foman, 371 U.S. at 182, 83 S. Ct. at 230).  "Although we review a district court's denial of a motion to amend only for abuse of discretion, we review de novo a decision that a particular amendment to the complaint would be futile."  Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).  We hold both that Plaintiffs did not properly request leave to amend and that the District Court did not err in finding that any amendment would be futile.

First, Plaintiffs did not properly seek leave to amend their Complaint.  As Plaintiffs acknowledge, they were required to move for leave to amend pursuant to Rule 15(a) and "either attach a copy of the proposed amendment to the motion or set forth the substance thereof."  United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1362 (11th Cir. 2006).  Plaintiffs argue they requested leave by pointing to the concluding paragraphs in various briefs they filed.  Assuming that Plaintiffs' requests amount to "the functional equivalent of a motion," we still "affirm the district court's rejection thereof because [they] failed to include the proposed amendment or the substance thereof" as required under this Circuit's precedent.  Id. Plaintiffs' argument that they would have added additional information to demonstrate Defendants' misrepresentations of the prevailing rates and how they

20

misled Plaintiffs is not sufficient to set forth the substance of a proposed amended complaint.

Neither did the District Court err in finding further amendments would be futile.  "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (quotation marks omitted).  The District Court compared Plaintiffs' Complaint with their first amended complaint (which had been dismissed as a matter of law) and found the claims Plaintiffs asserted in their operative complaint "told essentially the same story." See Hall, 367 F.3d at 1263 (affirming dismissal "because the three new claims asserted, like those in [the] first amended complaint, would have been subject to dismissal as a matter of law"); see also Burger King, 169 F.3d at 1319–20 (holding that amendment to add bad faith refusal to renew claim was futile when court had already decided on summary judgment that refusal to renew was justified).  We have already affirmed the dismissal of each of Plaintiffs' claims and now affirm the District Court's ruling that further amendment would have been futile.

## IV.   CONCLUSION

We **AFFIRM** the District Court.  Plaintiffs' RICO claims fail because they have not alleged any fraudulent or wrongful conduct to show there were predicate acts of fraud and extortion.  Similarly, Plaintiffs did not plead their state law fraud

claim with particularity.  Plaintiffs' unjust enrichment claim is also foreclosed by our decision in Quality Auto.  Neither was the District Court's decision to exclude Exhibits E1–E7 clearly erroneous or contrary to law.  Finally, any amendment to Plaintiffs' Complaint would have been futile, so the District Court's dismissal with prejudice was not in error.