[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12908

_____

D.C. Docket No. 1:16-cv-24793-MGC

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., et al.,

                                                                    Plaintiff-Appellants,

versus

UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,

                                                                    Defendant-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2021)

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

    This case comes to us as the latest installment of the long-running dispute

concerning the care of Lolita (also known as Toki), an orca kept at the Miami

Seaquarium. In this chapter, plaintiffs-appellants People for the Ethical Treatment of Animals, Inc.; Animal Legal Defense Fund; Orca Network; and Howard Garrett (collectively, PETA) alleged that the U.S. Department of Agriculture failed to follow its own policy when it added Seaquarium as a new site to an existing Animal Welfare Act license. The agency countered that the district court lacked subject matter jurisdiction over the dispute and that, even if it did have jurisdiction, the agency would succeed on the merits. The district court agreed and granted the agency's and Seaquarium's owner's motions to dismiss. Plaintiffs-appellants appeal that dismissal. Because we conclude that (1) the agency's licensing decision is subject to judicial review, and (2) the plaintiffs-appellants have stated a plausible claim that the agency violated its policy when it affirmatively added Seaquarium to an existing license, we reverse and remand.

I.    BACKGROUND

PETA brought suit against the U.S. Department of Agriculture and Elizabeth Goldentyer, the Director of Animal Welfare Operations for the Eastern Region of the U.S. Department of Agriculture Animal and Plant Health Inspection Service (collectively, the agency). Festival Fun Parks, LLC, d/b/a/ Miami Seaquarium and d/b/a Palace Entertainment (Palace), the owner of Miami Seaquarium, intervened in the suit as a defendant.

Seaquarium was formerly owned and operated by Wometco Enterprises (Wometco), the parent company of Marine Exhibition Corporation (Marine). On July 1, 2014, Marine was sold in a transaction wherein 100% of the company's stock was transferred from Wometco to buyer Festival.  Prior to this transaction, Marine held an exhibitor's license to operate Seaquarium while Palace held an exhibitor's license to operate a facility in New Hampshire.  The Animal Welfare Act, 7 U.S.C. § 2131 et seq., requires those licenses, issued by the agency, for "exhibitors" of animals.  *Id.* § 2133.  After the merger, the agency conducted a routine inspection of Seaquarium and added it as an additional site under Palace's existing license.

PETA alleges that the addition of Seaquarium to Palace's license violates the agency's "longstanding policy" that requires a new site to demonstrate full compliance with the Animal Welfare Act.  PETA claims that Lolita's tank fails to meet the standards set by the agency's regulations under the Animal Welfare Act.  The marine-mammal standards provide specifications for the humane treatment of marine mammals, such as Lolita.  *See generally* 9 C.F.R. §§ 3.100–3.118.  These specifications include a minimum-space requirement, under which cetaceans must be provided a "pool of water" that has a "minimum horizontal dimension (MHD)" that is "two times the average adult length" of the species.  *Id.* § 3.104(b).  According to the agency, the average length of an adult orca is 24 feet.  *Id.* § 3.104

3

tbl. III.  So a tank housing an orca must have an MHD of at least 48 feet.  Lolita's tank measures 80 feet by 60 feet.  But, due to a large obstruction, the MHD of Lolita's tank is 35 feet, falling short of the agency's regulations.

PETA alleged that Lolita's noncompliant tank, along with other Animal Welfare Act violations, should have prevented the agency from adding Seaquarium to Palace's license.  Invoking the Administrative Procedure Act, PETA asked the district court to set aside the addition of Seaquarium to Palace's license.  The agency filed a motion to dismiss for lack of subject matter jurisdiction and Palace filed a motion to dismiss for failure to state a claim.

The district court held a hearing, granted both motions, and dismissed PETA's complaint without prejudice.  The district court found that "procedurally [the defendants] have complied with the law to the extent that is required of the Administrative Procedure Act."  Further, the district court said, "the intervening circumstances of the sale did not change the licensing requirement or, above all else, give a third party the ability to come in and challenge how those procedures are being executed."  PETA now appeals the dismissal.

II.    STANDARD OF REVIEW

"We review questions of subject matter jurisdiction de novo."  *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213 (11th Cir. 2015).  We also review de novo a district court's grant of a motion to dismiss for failure to state a

4

claim, "accepting well-pleaded allegations in the complaint as true and construing them in the light most favorable to Plaintiffs." *Crawford's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019). To survive a motion to dismiss, a complaint must be plausible on its face. *Id.*

## III.    DISCUSSION

On appeal, PETA raises three arguments: (1) that the agency's decision is reviewable under the Administrative Procedure Act, (2) that the agency violated its own policy when it added Seaquarium to an existing license, and (3) that the district court erred in granting the motions to dismiss without reviewing the administrative record. We address each contention in turn.

### A.    Subject Matter Jurisdiction

As a threshold matter, PETA argues that the district court erred in determining that it lacked subject matter jurisdiction over this dispute. Specifically, PETA contends that the agency made a licensing decision for which the Animal Welfare Act provides a legal standard to guide judicial review. The agency, however, claims that it exercised discretionary enforcement power under the Animal Welfare Act when it added Seaquarium to an existing license, which immunizes its action from review.

PETA brings this suit pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, which provides that any "person suffering legal wrong because of

5

agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." That judicial-review provision, however, does not apply to "agency action [that] is committed to agency discretion by law." *Id.* § 701(a)(2). "Whether an agency action is reviewable under § 701(a)(2) is a matter of subject matter jurisdiction." *Animal Legal Def. Fund*, 789 F.3d at 1214.

Section 701(a)(2) precludes judicial review "whenever the statute under which the agency acts 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion'—that is, where a court would have 'no law to apply.'" *Id.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 830–31 (1985)). A presumption therefore arises that agency decisions to refuse enforcement "are committed to agency discretion by law and thus unreviewable." *Id.* That presumption, though, does not apply to "an 'affirmative act of approval under a statute.'" *Id.* (quoting *Heckler*, 470 U.S. at 831).

Here, PETA does not challenge the agency's decision not to bring an enforcement action against Seaquarium, but rather the addition of Seaquarium to Palace's license. We dealt with a nearly identical issue in *Animal Legal Defense Fund*. In that chapter of the Lolita saga, as here, the plaintiffs did "not seek an injunction requiring [the agency] to initiate enforcement proceedings against Seaquarium." *Id.* Rather, they sought a "judicial order setting aside [the agency's]

6

affirmative decision to renew Seaquarium's license." *Id.* We concluded that the Animal Welfare Act "provide[d] 'meaningful standard[s]' against which to judge [the agency's] exercise of discretion" in renewing a license. *Id.* at 1215 (quoting *Heckler*, 470 U.S. at 821) (second alteration in original).

So too, here. The decision to add Seaquarium as an additional site to an existing license constitutes an affirmative act of approval under a statute. Further, the Animal Welfare Act provides meaningful standards to judge the agency's addition of Seaquarium to an existing license. In line with *Animal Legal Defense Fund*, we hold that the agency's decision to add Seaquarium as an additional site to Palace's license is a final agency action subject to judicial review.

B.    Addition of Seaquarium to the Existing License

The parties extensively briefed the effect of Marine's stock sale and subsequent merger with Palace. Both Marine and Palace held licenses issued by the agency prior to the corporate changes, and the parties debate the effect the transaction had on each license. The operative allegation here, though—which we accept as true and which, in any event, does not appear disputed—is that the agency added Seaquarium to Palace's license. PETA challenges that addition alone, making what happened to Marine's license largely irrelevant.

PETA claims that because licenses are valid only at a specific location under the pertinent regulations, Palace needed to comply with the requirements for

7

obtaining an initial license before it could add Seaquarium to its existing license. PETA alleges that the agency "has a longstanding policy that requires an inspection and demonstration of [Animal Welfare Act] compliance before any regulated activities are conducted at a licensee's new site."  The agency violated that policy, PETA argues, when it added Seaquarium to an existing license after conducting only a "routine" inspection that did not require full compliance with the Animal Welfare Act.

The Administrative Procedure Act requires the reviewing court to "set aside agency action" that it determines to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In general, agencies "must respect their own procedural rules and regulations." *Romano-Murphy v. Comm'r*, 816 F.3d 707, 720 (11th Cir. 2016) (internal quotation marks omitted).  That requirement applies not only to an agency's promulgated regulations, but also "to agency deviations from internal guidelines not published in the *Federal Register*."  *Port of Jacksonville Mar. Ad Hoc Comm., Inc. v. U.S. Coast Guard*, 788 F.2d 705, 709 (11th Cir. 1986).  The dissent suggests that, in order to hold the agency accountable for violations of such internal guidelines, we typically require that they be delineated in a manual or directive. Dissent at 15.  But our caselaw has never established that limitation.  In fact, this Court has expressly found that longstanding agency practice alone can be binding

8

on the agency. *See Alamo Express Co. v. United States*, 613 F.2d 96, 97–98 (5th Cir. 1980) (finding that agency's failure to notify existing carriers, pursuant to "well-established" forty-year practice of giving existing carriers telephonic notice and opportunity to comment on the need for additional service, made action taken by agency without compliance invalid).[1]  As this Court noted in Alamo Express, "[w]e do not mean to suggest that the [agency] was required to adopt the notification practice" but if the agency wished to grant an emergency temporary authority "let it comply with its long standing procedure for protecting existing carriers or let it abolish the practice consonant with the APA." *Id.* at 98.

Here, PETA alleges that the agency failed to obey its longstanding policy that "requires" a demonstration of compliance with the Animal Welfare Act before allowing regulated activities at a licensee's new site.  The agency counters that it has no such policy, and, even if it did, it complied with it by performing a "routine" inspection.

On a motion to dismiss, however, we are required to accept as true PETA's well-pleaded allegations that the agency had such a policy and violated it.  The agency points out that PETA has not cited to any regulation or binding authority

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all Fifth Circuit decisions issued before October 1, 1981, as binding precedent.

discussing this policy.  But the complaint does discuss statutory and regulatory authority that make the existence of the policy plausible.  PETA identifies the agency regulation that Animal Welfare Act licenses "are issued to specific persons for specific premises and do not transfer upon change of ownership, nor are they valid at a different location."  9 C.F.R. § 2.5(d). [2]   That means Palace's license, issued for its facility in New Hampshire, may not cover Seaquarium in Miami.  And the issuance of a new license requires that the exhibitor "demonstrate[] that his facilities comply with the standards" promulgated pursuant to the Animal Welfare Act.  7 U.S.C. § 2133.  Further, the briefing on the motions to dismiss contains apparent admissions by the agency, disputed on appeal, that such a policy exists.  It is at least plausible then that the agency has a policy that the addition of a new site to an existing license requires a full prelicensing inspection to ensure compliance with all Animal Welfare Act requirements.

The agency contends that neither the statute nor the regulations speak to the specific circumstances in this case and that it acted reasonably when it added Seaquarium to Palace's license.  Maybe so.  But the plausible allegations of the

_____

[2] This is what the regulation stated at the time that Seaquarium was added to Palace's existing license.  The agency has since amended its regulations under the Animal Welfare Act, effective May 13, 2020, in part in response to the situation presented by this case—where an existing licensee takes ownership of a new facility.  The regulation now states that: "Licenses are issued to specific persons, and are issued for specific activities, types and numbers of animals, and approved sites. A new license must be obtained upon change of ownership, location, activities, or animals. . . ."  See 9 C.F.R. § 2.1(b)(1); see also 85 Fed. Reg. 28,772, 28,775–76 (May 13, 2020).

agency's failure to comply with its longstanding policy that rise above mere "labels" and "conclusions," together with the agency's apparent admission in the district court that such a policy exists, make dismissal at this stage premature. Even if the informal policy that PETA alleges ultimately ends up to be only a "fictitious legal requirement," the allegations in the complaint raise a plausible claim that is not "pointless" to further examine. That is the standard before us now.

The dissent cites to several cases for the proposition that the alleged informal policy here is either nonexistent or insufficient to bind the agency. Dissent at 15–16, 18. But two of the cited cases were resolved at the summary judgment stage, rather than on motions to dismiss, underscoring the proper procedure in this case—remand for the case to proceed to the summary judgment stage to determine the merits of the well-pleaded complaint. *See Port of Jacksonville*, 788 F.2d at 705-06 (affirming entry of summary judgment in favor of Coast Guard); *Animal Legal Def. Fund*, 789 F.3d at 1213, 1225 (applying de novo review and affirming entry of summary judgment in favor of USDA).

Additionally, *Romano-Murphy*, 816 F.3d 707, 714, is also distinguishable from the procedural posture of this case. In *Romano-Murphy*, the tax court denied a motion to vacate based on its interpretation of the Internal Revenue Code, and therefore our review of that interpretation was plenary. *Id.* Because our review

11

was plenary, this Court in evaluating the merits of the tax liability made its determination based on a review of "the parties briefs, the record, the relevant statutory and regulatory provisions, the IRS' manual and procedures, and with the benefit of oral argument"—a review that looks much more like the summary judgment stage of litigation than the motion to dismiss stage. *Id.*

We cannot conclude that PETA has failed "to state a claim to relief that is plausible on its face." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (internal quotation marks omitted). We therefore reverse the district court's grant of both the agency's and Palace's motions to dismiss. [3]

C.    Production of the Administrative Record

PETA also argues that the district court erred in granting the motions to dismiss without first reviewing the administrative record. To make a "determination[]" under the Administrative Procedure Act, the district court must "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Section 706 defines "determinations" in § 706(1) and § 706(2)(A)–(F) to include a finding that agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."

---

[3] On remand, the district court's review is confined to the administrative record. *See* Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

In ruling on the motions to dismiss for lack of subject matter jurisdiction and failure to state a claim, the district court did not make a § 706 "determination[]." Rather, it found that PETA could not bring its claim as a matter of law. *See also Animal Legal Def. Fund*, 789 F.3d at 1225 n.13 ("Because there is no factual dispute about whether [the agency] correctly found Seaquarium satisfied all licensing requirements, the district court had no reason to examine the administrative record."). As such, it did not need to review the administrative record at that stage of the proceeding to make its decision. We see no error there. On remand, however, the case will be at a stage requiring review of the administrative record.

IV.    CONCLUSION

For the aforementioned reasons, we reverse the decision of the district court and remand for further proceedings.

**REVERSED** and **REMANDED**.

BRASHER, Circuit Judge, concurring in part and dissenting in part:

I concur with the Court's resolution of the first question presented—whether the agency's decision to add a new location to an existing license is a reviewable agency action as a general matter. I also agree with the Court on the third question—that there was no need for the district court to review the administrative record in resolving the motion to dismiss. But I respectfully disagree with the Court's conclusion that the plaintiffs, PETA and other animal welfare organizations, have stated a claim upon which relief may be granted.

The operative complaint asserts that the USDA acted arbitrarily and capriciously when it allowed the Seaquarium to display an orca under its new parent company's existing license because the USDA failed to follow a "longstanding policy for the addition of new sites to existing licenses." This informal policy allegedly requires that the USDA conduct a full inspection of new locations under the Animal Welfare Act. The Court holds that, because we are reviewing an order on a motion to dismiss, "we are required to accept as true PETA's well-pleaded allegations that the agency had such a policy and violated it." This is so, the Court says, because certain statutory and regulatory authorities "make the existence of the policy plausible," even though "PETA has not cited to any regulation or binding authority discussing this policy."

14

I agree, of course, that we are required to accept PETA's factual allegations as true at this stage of the case. For example, we must take as true PETA's allegation that the USDA did not conduct a full inspection before listing the Seaquarium's site on its parent company's license. But I believe that PETA's bare assertion that an informal policy required the agency to conduct such an inspection, without more, does not state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts cannot enforce an agency's "internal operating instructions" that are "solely for in-house agency use." *First Alabama Bank, N.A. v. United States*, 981 F.2d 1226, 1230 n.5 (11th Cir. 1993). Accordingly, in cases where this Court has held an agency accountable for violating its own policy, there has typically been a manual or directive that the agency intended to bind its discretion. The cases the Court relies on are no exception. In *Romano-Murphy v. Comm'r*, 816 F.3d 707 (11th Cir. 2016), for example, the agency was alleged to have violated the "IRS Manual." *Id.* at 719. In *Port of Jacksonville Mar. Ad Hoc Comm., Inc. v. U.S. Coast Guard*, 788 F.2d 705 (11th Cir. 1986), the dispute was about whether the agency complied with the Coast Guard bridge administration manual. *Id.* at 709. In *Alamo Exp., Inc. v. United States*, 613 F.2d 96, 97 (5th Cir. 1980), the court vacated an agency action taken in violation of "well-established [agency] practice"—a notice requirement that had been observed for forty years. PETA's

15

allegations stand in stark contrast to these authorities. Here, PETA invokes no such directive or well-established practice. It does not even attempt to identify the source of the purported informal policy that the USDA allegedly violated.

A plaintiff cannot rely on mere "labels" or "conclusions" without any supporting "[f]actual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). PETA provides no factual allegations in the operative complaint on this issue at all—merely the conclusory assertion that an informal policy exists. In lieu of any well-pleaded facts supporting the existence of an informal policy, PETA asks us to triangulate its existence from other sources—primarily the purposes of the AWA and unrelated regulations. But such judicial guesswork is exactly the kind of speculation disfavored under the plausibility pleading standard. *Id*. at 555; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) ("[T]he pleading must contain something more by way of a claim for relief than . . . a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action."). In constitutional cases, we routinely hold that a plaintiff's conclusory allegation of the existence of a government policy is insufficient to state a claim.[1] I see no reason why such a conclusory allegation would be sufficient to state a claim here.

---

[1] *See Piazza v. Jefferson Cty., Alabama*, 923 F.3d 947, 957–58 (11th Cir. 2019) (holding that to plausibly allege that "a policy or its absence caused a constitutional harm" a plaintiff must

PETA erroneously argues that the USDA conceded the existence of an applicable policy in its motion to dismiss. It did no such thing. In its motion, the USDA acknowledged the existence of "established additional site practices" that allow additional sites to operate under existing licenses, provided a "satisfactory compliance inspection" is conducted by the agency. But the USDA only described its established practices to show that they did not contemplate the situation here where, rather than adding an additional site to an existing license in the normal course, a surviving corporate entity held two separate licenses that needed to be reconciled. Far from conceding the existence of a controlling policy, the USDA was clear that there is "nothing in the statute itself, the regulations promulgated by the agency, or the agency's controlling policies that address this unique situation."

For its part, the Court relies on certain statutory and regulatory provisions that, it says, make it plausible that the alleged informal policy exists. *See* 7 U.S.C. § 2133; 9 C.F.R. § 2.5(d). But these authorities do not, in my view, support the Court's analysis. Although Section 2133 requires an exhibitor to "demonstrate that his or her premises" comply with certain regulations and standards, this Court has

allege "multiple incidents" and that "conclusory assertions" regarding the existence of a policy "without alleging any facts concerning those policies or customs" were insufficient to state a claim); *Hoefling v. City of Miami,* 811 F.3d 1271, 1280 (11th Cir. 2016) (holding that a plaintiff sufficiently pled the existence of a policy where, rather than rely on "naked allegations," he alleged facts about city's "cleanup" program); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015) ("Neither count three nor any other part of the complaint contains sufficient, non-conclusory allegations that there is an official 'policy or custom' of covering up constitutional deprivations like the ones that Weiland claims to have suffered.").

already held that this section governs only the issuance of *new* licenses. *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217–18 (11th Cir. 2015) (holding that "Congress . . . chose instead to limit § 2133's language to issuance alone"). Here, the agency added a location to an existing license; it did not issue a new one. Similarly, Section 2.5(d) governs the "duration" and "termination" of licenses, not the approval of additional sites under existing licenses. Although Section 2.5(d) explains why the USDA would not allow the newly merged company in this case to hold two separate licenses simultaneously, it says nothing about whether or how the old companies' pre-existing locations should be reflected on the merged company's single license.

The dispute over this orca has been going on for a long time, and it has raised serious issues about animal welfare. Nonetheless, we have emphasized that the USDA has the expertise and the discretion to address those issues under the Animal Welfare Act. For that reason, when the USDA renewed Seaquarium's license in 2015, we refused to "direct[] the district court to scrutinize the administrative record to evaluate whether USDA complied with a fictitious legal requirement." *Animal Legal Def. Fund*, 789 F.3d at 1224 n.13. Such an inquiry, we said, would be "the height of pointlessness." *Id*. In my view, the Court's opinion now orders a similar inquiry that is unjustified by the complaint's allegations. Accordingly, I respectfully dissent in part.