**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-12882

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

EUGENE J. NIKSICH,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-02411-SCJ

————————————

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Defendant-Appellant Eugene Niksich appeals the district court's order granting the United States' motion for summary judgment, in which the court found that Niksich willfully failed to file complete and accurate Reports of Foreign Bank and Financial

Accounts (FBAR) from 2006 through 2012. Niksich argues that he was unaware of the FBAR requirements until after the years at issue and misunderstood that he needed to report his financial interest in foreign accounts if the money was not invested. He alternatively asserts that the district court incorrectly denied his motion for summary judgment based on the affirmative defenses of accord and satisfaction and equitable estoppel. Niksich also claims that the FBAR penalties are subject to the Excessive Fines Clause of the Eighth Amendment and remand is necessary to develop an appropriate factual record to determine if the fines were excessive.

We hold that the district court properly granted the government's motion for summary judgment. The court correctly found that Niksich's failure to properly report was willful and that the affirmative defenses did not apply. But the district court erred in finding the FBAR penalties are not subject to the Excessive Fines Clause of the Eighth Amendment. And we agree with Niksich that remand is necessary on the excessiveness issue so that the parties may develop a factual record and argue under the standard set in *United States v. Schwarzbaum*, 127 F.4th 259 (11th Cir. 2025). Thus, we affirm in part and reverse and remand in part.

## I.    FACTUAL BACKGROUND

Niksich is the founder and Chief Executive Officer (CEO) of Unique Sporting Products, Inc. He has a bachelor's degree in product design and a master's degree in business administration. In the 1990s, Niksich's accountant advised Niksich to place his assets in a Swiss account to protect from a potential judgment creditor.

Acting on that advice, Niksich hired a foreign asset manager and gave him authority to manage assets deposited in Niksich's name, as well as a limited power of attorney.

With the foreign asset manager's help, Niksich opened a Swiss bank account at AKB Privatbank Zurich AG (AKB). Niksich's bank statements were sent to his United States address. His AKB account was under the alias "Misty," Niksich's dog. Niksich testified that he was told he needed to identify his account by a name and was asked the name of his favorite pet without further explanation. He paid a fee for the bank to hold his mail but testified that he did not remember if he agreed to a mail hold and had "no idea" about a fee. Niksich intentionally hid his AKB bank account from his then-wife. Niksich denied that his accountant advised him of any U.S. disclosure requirements regarding his account. Niksich did not file timely FBARs for his AKB account. In 2010, acting on the advice of others, Niksich moved his account to DZ Bank (DZ). Niksich signed documents in connection with the DZ account but says that he does not know if it was a numbered account and was unaware of paying any fee for a mail hold arrangement.

Around 2011 Niksich opened a bank account at Ban Vivenda Banca Privada (BVBP) in Panama in preparation to become a permanent resident. He also invested in a Panamanian housing project and prepared to purchase a condo. In 2012, Niksich anticipated closing his DZ account, and had his foreign asset manager sell securities and wire the proceeds to his BVBP account.

Niksich had always self-prepared his personal tax returns, which were then reviewed by his accountant. Although he consistently reported income from multiple different domestic investments, he did not disclose his foreign investments. For the related period, Niksich filed Schedule B-Interest and Ordinary Dividends with his federal income tax return, which included a question about foreign interests. In 2006, he marked "No" in response to whether he had any "interest in or signature authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." For tax years 2007-2012, Niksich left the same question blank.

Niksich understood the Foreign Account Tax Compliance Act (FATCA) to be a law that required disclosure of foreign accounts to the Internal Revenue Service (IRS).[1] He discussed FATCA with other people, including his family, Panamanian bank representatives, and a business associate.

Niksich testified that he first became aware of the FBAR requirement around 2013 or 2014. In 2014, Niksich consulted with an attorney and began a voluntary disclosure to the IRS to correct his tax filings. He entered the IRS Offshore Voluntary Disclosure

---

[1] The Foreign Account Tax Compliance Act was passed in 2010 and imposed two requirements to combat tax evasion by U.S. persons with investments in foreign accounts: (1) certain U.S. taxpayers holding foreign financial assets outside must report those assets to the IRS, and (2) foreign financial institutions must report directly to the IRS certain information about financial accounts held by U.S. taxpayers or foreign entities in which U.S. taxpayers held a substantial ownership interest. 26 U.S.C. § 6038D; 26 U.S.C. § 1471.

Program (OVDP), which offers taxpayers with undisclosed income from foreign assets a "compliance avenue to resolve income tax liabilities, various tax information reporting obligations relating to foreign financial assets, and FBAR reporting requirements." Niksich then filed untimely FBARs that reported his interests in each account.

His untimely FBARs reported the following information:

- in 2006, his securities account at AKB held a maximum of $2,392,780;

- in 2007, his AKB securities account held a maximum of $3,340,310;

- in 2008, his AKB securities account held a maximum of $2,083,662;

- in 2009, his AKB securities account held a maximum of $3,527,321;

- in 2010, his AKB securities account held a maximum of $4,361,860;

- in 2010, DZ securities account held a maximum of $4,573,907;

- in 2011, his DZ securities account held a maximum of $3,603,058, while his two BVBP bank accounts held a maximum of $22,296 and $10,261;

- in 2012, his DZ securities account held a maximum of $3,240,850;

- in 2012, his two BVBP bank accounts held a maximum of $2,338,021 and $1,010,666.

Niksich later filed amended FBARs for 2011 and 2012 ,reporting an additional BVBP account. In both 2011 and 2012, the additional bank account held a maximum of $4,000.

After filing his corrected returns, FBARs, and providing the IRS with bank statements and other required documentation, Niksich elected to opt out of the OVDP, which the IRS committee approved in March 2017. In May 2018, Niksich's file was assigned to IRS agent Daniel Ford, who was being managed by Michael Counts. Ford subsequently scheduled a meeting with IRS counsel Brianna Taylor to discuss the facts of the case. In May 2019, Ford and Taylor met with Niksich, his attorney, and a new accountant. Taylor explained that the IRS was seeking to move forward with a settlement via a closing agreement known as a Form 906. Ford calculated a penalty of $419,123 to resolve the FBAR issues, which the IRS examination team determined was reasonable and appropriate.

Ford then shared Form 906 with Niksich, explaining that it had been approved and was ready for issuance. Form 906 identified a miscellaneous penalty for $419,123. Between November 2019 and February 2020, Niksich signed Form 906 and was instructed to provide payment. In February 2020, Ford received a check from Niksich for $331,375.85.[2] Ford testified that Niksich fulfilled his

---

[2] The remaining $157,317.46 was a credit from an overpayment Niksich made to the IRS in 2015.

24-12882                Opinion of the Court                7

requirements for the settlement agreement and that his check was processed. Ford also completed a Form 8278[3] stating the penalty was $419,124, which was then approved by Counts.

In May 2020, the IRS Technical Services team was reviewing Niksich's case to ensure that the payment of the penalty had been applied correctly from an administrative standpoint. In June 2020, the IRS told Niksich that it would not enter into a settlement agreement with him because Niksich had not opted out of OVDP but was rather removed. During that call, Niksich requested the return of the settlement. Ford later testified that it would be reasonable for a taxpayer in Niksich's position to expect a refund of the payment if the agreement would not be honored.

Later in June 2020, the IRS mailed Niksich a penalty assessment of $2,286,954 for the willful failure to file complete and accurate FBARs for 2006-2012 under 31 U.S.C. § 5321(a)(5). In July 2020, Niksich timely responded through counsel, disputing the willful penalty and requesting an appeals conference. Niksich reiterated his request for the refund of his settlement payment. At the same time, the IRS mailed a letter demanding payment of the $2,286,954 within thirty days. Niksich's 2020 tax account transcript shows a credit for the $419,124 amount paid.

---

[3] Form 8278 is used internally to track and process miscellaneous civil penalties.

## II.    PROCEDURAL HISTORY

The United States sued Niksich to collect civil penalties for his alleged willful failure to timely file FBARs. After discovery, Niksich moved for summary judgment based on his affirmative defenses of accord and satisfaction and equitable estoppel. The United States also moved for summary judgment, asking the court to find Niksich's failure to timely file FBARs as reckless or willful as a matter of law.

The district court granted the government's motion and denied Niksich's. The district court found that Niksich was on inquiry notice as to his duty to file FBARs because he self-prepared his tax returns and signed them under penalty of perjury. His answer of "no" to the foreign account inquiry in 2006 and leaving the inquiry blank in 2007-2012 supported a finding of recklessness. Further indicia of recklessness included opening foreign accounts to protect funds from potential creditors, using an alias for foreign accounts to hide his identity, paying a fee for the banks to hold his mail, and engaging with banks that later signed prosecution agreements after assisting American taxpayers in hiding from the IRS. The court rejected Niksich's affirmative defense of accord and satisfaction by concluding that actual authority is always required for an agreement to bind the government, and there was none here. The court also rejected his defense of equitable estoppel because (1) the IRS's retention of his payment did not amount to negligent or willful conduct because Niksich did not present evidence showing he followed administrative procedures for requesting a refund, and (2) Niksich failed to show the IRS's actions amounted to something

more than governmental negligence or inaction. The court also found that the Eighth Amendment does not apply to civil FBAR penalties as a matter of law and that Niksich owed the IRS the full penalty of $2,286,954. Niksich timely appealed.

## III.    STANDARD OF REVIEW

We review the district court's order on summary judgment de novo, "applying the same legal standard the district court used." *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994). In conducting our review, "we are required to view the evidence and all factual inferences therefrom in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007) (internal quotation marks omitted). Thus, "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc). Legal issues, such as whether the district court applied the correct legal standard of willfulness, are also reviewed de novo. *United States v. Rum*, 995 F.3d 882, 887–88 (11th Cir. 2021) (per curiam).

For summary judgment, the key issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (quotation marks omitted).

## IV.    WILLFULNESS

Niksich argues that because subjective evidence is used in determining willfulness, willfulness itself is a factual issue that can present a genuine dispute of material fact that precludes summary judgment, and that it does so here. He argues that relying on his accountant in opening the accounts, voluntarily disclosing his accounts after becoming aware of the FBAR requirement, and his own mistaken belief that non-trading investment assets need not be reported, all demonstrate that he did not willfully violate the law but misunderstood it.

Though willfulness has many meanings, willfulness generally denotes conduct that is intentional, knowing, or voluntary, as distinguished from accidental conduct. *See Rum*, 995 F.3d at 888–89. Willfulness can "characterize conduct marked by careless disregard whether or not" one has the right to act. *Id.* at 889. "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* at 888. Willfulness includes reckless disregard of a known or obvious risk, such as failing to investigate or correct mismanagement after being notified that withholding taxes have not been duly remitted. *See id.* at 889. Willfulness based on recklessness is established if a defendant "(1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and if (3) he was in a position to find out for certain very easily." *Id.* Significantly, "the appropriate standard of willfulness to warrant the FBAR penalty is . . . an objective standard: action entailing an unjustifiably high risk of harm that is either known

or so obvious that it should be known." *Id.* at 890 (internal quotation marks omitted).

We are unpersuaded by Niksich's arguments and agree with the district court that Niksich was reckless under *Rum*'s three-prong test. *See* 995 F.3d at 889. He clearly ought to have known that there was a grave risk an accurate FBAR was not being filed, and he was able to find out for certain very easily. As an initial matter, Niksich's argument that he did not willfully violate the law but merely misunderstood it is insufficient to preclude summary judgment under an objective standard. *See Rum*, 995 F.3d at 890.

We have held that a taxpayer's self-serving affidavit, if it is based on personal knowledge and not conclusory, can defeat summary judgment. *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc). Niksich's testimony, while relevant, cannot defeat summary judgment here because (1) the willfulness standard for FBAR penalties is objective and (2) the objective facts show willfulness. *See United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 560–61 (1961) ("[E]ven assuming that Wenzell did not think there was a conflict, that fact is irrelevant. . . . [T]he [conflict-of-interest] statute establishes an objective, not a subjective, standard, and it is therefore of little moment whether [Wenzell] thought he was violating the statute, if the objective facts showed that there was a conflict of interest."); *Amlong & Amlong, P.A., v. Denny's, Inc.*, 500 F.3d 1230, 1241 n.1 (11th Cir. 2007) (although an attorney's state of mind is not irrelevant in assessing whether his conduct was "objectively reckless," the "absence of subjective bad faith does not

excuse objectively blameworthy conduct"); *United States v. Reyes*, 164 F.4th 78, 90 (2d Cir. 2026) (explaining, in an FBAR penalty case, that a "defendant's subjective belief does not negate a finding of recklessness or willful blindness") (internal quotation marks and citation omitted).

The undisputed facts support a finding of willfulness. Niksich testified that he opened the foreign account to protect himself from potential creditors and intentionally hid his foreign bank account from his then-wife. He kept at least one foreign account in his dog's name, and he paid a fee for the foreign bank to hold his mail. Niksich knew of and discussed FATCA with multiple other people. Further, his professional experience and master's degree in business administration suggest he should have known about filing FBARs.

The tax returns themselves also provide indicia of recklessness. Niksich's tax returns include Form 1040, in which Line 7a of Schedule B asks if the taxpayer has any interest in a financial account in a foreign country, such as a bank account, securities account, or another financial account. The question is written in plain language, using examples expressly identifying what needs to be reported, and asks for a simple yes or no response. The self-prepared nature of Niksich's tax returns indicates that he "even more probably read the instructions and would have seen Line 7a of Schedule B" of his 2006 Form 1040 tax return. *Rum*, 995 F.3d at 890. Any argument that Niksich was not aware of the FBAR requirements is undermined by his 2006 tax return, in which he actively

answered Line 7a of Schedule B. Niksich responded "No" to the 2006 tax return question, followed by five years of leaving the question blank. There is no record evidence showing that the omission from 2007 to 2012 was accidental.

Aligning with the *Rum* factors, Niksich clearly ought to have known about the FBAR requirement and was able to find out for certain very easily. The language of the form that Niksich signed under penalty of perjury makes this clear, as does Niksich's personal conduct. Thus, because Niksich clearly met the willfulness standard, we affirm the district court's granting of summary judgment as to this issue.

## V.    AFFIRMATIVE DEFENSES

Next, Niksich argues that the district court erred when it found that he did not prove his affirmative defenses of accord and satisfaction and equitable estoppel. We address each affirmative defense in turn.

### A. Accord and Satisfaction

Niksich contends that Agent Ford, Manager Counts, and IRS Counsel Taylor bound the IRS to an accord and satisfaction by negotiating, approving, and accepting Niksich's signed closing agreement and settlement payment check. Niksich contends that he reasonably relied on the signed agreement and retention of the money as resolution of the dispute. He asserts that the IRS needed to return his settlement payment if it intended to repudiate the prior agreement, and its retention of the payment implicates the authority of the IRS entity itself.

For an accord and satisfaction, when "an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole." *Chi., Milwaukee, & St. Paul Ry. Co. v. Clark*, 178 U.S. 353, 367 (1900). "Federal courts use federal common law to evaluate government contracts." *Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005). There are four other elements to look to in the formation of an accord and satisfaction besides the payment itself: "(1) proper subject matter; (2) competent parties; (3) mutuality of assent; and (4) consideration." 5 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 73:29 (4th ed. 1993) (footnotes omitted); *Thomas Creek Lumber & Log Co. v. United States*, 36 Fed. Cl. 220, 238 (1996).

"[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . . [T]his is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). "The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power." *Id.*

The district court properly concluded that Niksich was not entitled to summary judgment because while Niksich likely met

24-12882                Opinion of the Court                15

the foundational requirements for an accord and satisfaction, the IRS agents did not have actual authority to bind the IRS. The IRS agents Niksich worked with communicated to Niksich that their settlement agreement was final, as supported by the internal emails between IRS Agent Ford and Counsel Taylor. Ford explicitly communicated to Niksich's attorney that Form 906 had been approved and was ready for issuance, after which Niksich appropriately signed and returned the form and later provided a check for the proposed settlement amount. In his deposition, Ford testified that Niksich's check had been processed, which seemed to constitute acceptance on the government's part. This all suggests that an accord and satisfaction took place.

But the IRS agents did not have actual authority to bind the IRS. *Merrill* makes it clear that the scope of a government agent's authority must be explicitly defined by Congress or limited by delegated legislation, and that any reliance on a government agent's authority is limited by whether that agent had actual authority. 332 U.S. at 384.

Pursuant to 31 C.F.R. § 1010.810(g), the authority to enforce the provisions of 31 U.S.C. § 5314 and 31 C.F.R. §§ 1010.350 and 1010.420 have been redelegated from FinCEN to the Commissioner of Internal Revenue by means of a memorandum of understanding between FinCEN and the IRS.

The Internal Revenue Manual (IRM) 1.2.2.14.13(32)-(33) (2019), which addresses enforcement of FBAR requirements, states the authority "to enter into and approve a written agreement with

any person relating to the person's civil liability for an FBAR penalty, other than an agreement to extend the period of limitations on assessment or collection of civil FBAR penalties" is given to officials authorized to enter and approve closing agreements.

The statute addressing closing agreements, 26 U.S.C. § 7121, does not list the officials and/or employees who can enter into such agreements. The Treasury regulations on closing agreements and compromises are also silent on that matter. *See* 26 C.F.R. §§ 301.7121-1, 301.7122-1. But IRM 1.2.2.9.3 (14)-(15) (2019), which listed the officials and employees to whom closing authority was delegated, did not include examining or receiving IRS agents like Agent Ford.[4]

Niksich argues that authority to settle by way of a closing statement is determined by reference to federal common law. But "even under principles of federal common law[, judgments or settlements] depend on the actual authority of the person purporting to compromise the claim." *Morgan v. South Bend Comm. School Corp.*, 797 F.2d 471, 478 (7th Cir. 1986) (citing *United States v. Beebe*, 180 U.S. 343, 351–55 (1901)). And Niksich has cited no authority establishing that Agent Ford had actual authority under federal common law to settle his FBAR penalties.

---

[4] The IRM "does not have the force of law," but it has "persuasive authority" on the matters it addresses. *Romano-Murphy v. Comm'r*, 816 F.3d 707, 719 (11th Cir. 2016).

As the district court noted, the purported settlement agreement notes that Ford was acting as the "Receiving Officer" and that his signature merely indicated that he "examined the specific matters and recommend[ed] the acceptance of the proposed agreement.'" Moreover, "[t]he signature line certifying that the 'Commissioner of Internal Revenue' has read and agreed to the terms of the document [was] conspicuously blank." From the face of the document, it is clear that the agreement was not binding and that Ford did not have actual authority.

### B. Equitable Estoppel

Niksich argues that even if an accord and satisfaction was not met, the government was estopped from pursuing additional penalties because IRS representatives engaged in words, acts, and conduct that caused Niksich to believe the settlement was final, approved, and that the dispute was over. The IRS's refusing to return Niksich's settlement money constitutes affirmative misconduct.[5] Niksich asserts that the government-specific elements of an estoppel claim are met because the IRS was acting in a proprietary capacity and the IRS representatives acted in the scope of their responsibilities.

The elements of equitable estoppel are: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard

---

[5] The United States responded to this argument by pointing out that Niksich only informally requested a refund and did not avail himself of the appropriate procedures necessary to formally request a refund.

to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Tefel v. Reno*, 180 F.3d 1286, 1302 (11th Cir. 1999) (internal quotation marks omitted). If available at all, estoppel against the government depends on a showing of affirmative misconduct. *Id.* The Supreme Court has never affirmed a finding of estoppel against the government. *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422–23 (1990).

The district court properly concluded that Niksich was not entitled to summary judgment on his equitable estoppel claim. Niksich does not meet the high bar required for an equitable estoppel claim against the government because he is unable to show affirmative misconduct. The IRS may have behaved poorly, but because Niksich did not file a formal refund request or file suit against the government, the IRS retaining funds from the settlement payment despite Niksich's informal requests is not the sort of affirmative misconduct by the government that is required for equitable estoppel. *See* IRM 4.26.17.4.4(9) (2025)[6] ("Generally, to obtain a refund, the person against whom the FBAR penalty was assessed

---

[6] The government argued that Niksich failed to file an administrative refund claim, rather than claiming he failed to file a suit against the government, because IRM 4.26.17.4.4(9) had not yet been published. IRM 4.26.17.4.4(9) exists in the most current version of the IRM and is dated September 4, 2025, a month before oral argument took place. The government could not have argued under the persuasive authority of the IRM because the section did not yet exist. Nonetheless, Niksich did not pursue either of these formal procedures to receive a refund, and as such, is not yet entitled to a refund.

24-12882            Opinion of the Court            19

must file a refund suit against the government."); *cf. United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 14 (2008) (holding that a taxpayer seeking a refund for a tax assessed in violation of the Export Clause must file a timely administrative refund claim before bringing suit against the Government). Thus, even if Niksich detrimentally relied upon the agents' words, acts, or conduct, he is unable to meet all of the elements for a claim of equitable estoppel.[7]

★    ★    ★

Thus, we determine that the district court did not err in denying summary judgment on Niksich's affirmative defenses of accord and satisfaction and equitable estoppel. We affirm as to this issue.

## VI.    EXCESSIVENESS

In *United States v. Schwarzbaum*, this court held that the Excessive Fines Clause of the Eighth Amendment applies to FBAR penalties. 127 F.4th 259, 266 (11th Cir. 2025). But at the time that the district court order was entered, this court had not issued its decision in *Schwarzbaum*.

Niksich argues that since *Schwarzbaum* came out after the district court's order, the case should be remanded for factual development on whether the penalty is unconstitutionally excessive

---

[7] Niksich also argues that the district court put too great a weight on the contents of the Internal Revenue Manual (IRM). However, upon review, the district court appropriately looked to the IRM for guidance and did not solely rely on the IRM as if it were law.

because neither party had an occasion to brief the issue at the district court level, as evidenced by the absence of the June 30 account balances in the record. Niksich contends that the excessiveness issue was decided by an appellate court in *Schwarzbaum* only because the parties had a bench trial, which allowed them the full opportunity to present all relevant evidence. Since the government moved for summary judgment specifically on whether the Excessive Fines Clause applied, neither party presented relevant evidence that would address excessiveness itself, such as facts related to account balances, calculations of penalties, or harm caused by defendant action. We agree. As such, we remand as to the excessiveness issue so the parties may have an opportunity to develop a factual record.

## VII.    CONCLUSION

The district court properly found Niksich willfully violated his statutory duty to file timely FBARs for the years of 2006-2012 as a matter of law, and the affirmative defenses of accord and satisfaction and equitable estoppel do not apply. Thus, we affirm the district court on the issues of willfulness and Niksich's affirmative defenses. Finally, the district court incorrectly found that FBAR fines are not subject to the Eighth Amendment's Excessive Fines Clause, so we reverse and remand so the parties may argue under the appropriate standard.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**